PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Christina ORTEGA, Defendant–Appellee.

No. 01SA70.

Supreme Court of Colorado,
En Banc.

Oct. 1, 2001.

Frank J. Daniels, District Attorney Twenty–First Judicial District, Brian J. Flynn,

Deputy District Attorney, Grand Junction, CO, Attorney for Plaintiff–Appellant.

Colleen B. Scissors, Grand Junction, CO, Attorney for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

This case arises out of a routine weapons and narcotics interdiction that led to the arrest of Defendant, Christina Ortega. The state filed this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), 6 C.R.S. (2000), for review of the trial court's order suppressing evidence against Defendant.[1] The trial court found that evidence against Defendant had been unlawfully obtained without probable cause in violation of Defendant's Fourth Amendment rights. U.S. Const. amend. IV. Specifically, the court determined that drug task force officers had seized Defendant's suitcase by taking possession of it, inspecting it, and altering it. Because this seizure was unlawful, according to the court, Defendant's consent to search the suitcase and her statement made to police were tainted by a prior illegality. Hence, the court suppressed the contents of the suitcase as well as Defendant's statement.

Contrary to the trial court's ruling, we hold that although the officers' conduct resulted in a seizure of Defendant's suitcase, probable cause was not required for the seizure. Instead, we hold that the officers' actions amounted to a temporary, investigative detention of property under *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), requiring reasonable suspicion and not probable cause. Moreover, under the facts of this case, we conclude that the officers had reasonable suspicion for the investigative detention. Since the seizure was lawful, Defendant's consent to search her suitcase and her statement made to police were not attributable to a prior illegality. Accordingly, we now order that the trial court vacate its order barring the contents of the suitcase and the Defendant's statement to police.

---

**1.** Section 16–12–102(2) provides:

The prosecution may file an interlocutory appeal in the supreme court from a ruling of the trial court granting a motion made in advance of trial by the defendant ... to suppress evidence ... if the prosecution certifies to the judge who granted such motion and to the supreme court that the appeal is not taken for the purpose of delay and the evidence is a substantial part of the proof of the charge pending against the defendant.

## I. FACTS AND PROCEDURAL HISTORY

The drug interdiction occurred at a Greyhound Bus depot in Grand Junction, Colorado. The Greyhound Bus Lines administration gave two drug task force officers permission to inspect luggage and talk to passengers. Defendant's bus, traveling from Los Angeles, California, stopped at the depot for routine maintenance and servicing. After the passengers exited the bus, and while the bus was being serviced in a garage, the officers opened the bus's luggage compartment to inspect the luggage and conduct a dog "sniff screen." During this inspection, the officers noted several "indicators" suggesting that Defendant's suitcase contained illegal narcotics. According to the officers, the suitcase emitted a strong chemical odor; was relatively new and expensive; was unusually heavy; had a large lock; and had no name tag identifying its owner. Although the dog did not alert the officers to the presence of drugs, the officers remained suspicious. They suspected that the chemical odor was being used to mask the odor of drugs and reduce the effectiveness of sniff screens.

The officers planned a ruse aimed at identifying the suitcase's owner. One of the officers put on a Greyhound uniform. After the bus had been moved back outside and the passengers had re-boarded, the officer removed Greyhound's claim tag from Defendant's suitcase and carried the suitcase from the garage back to the bus. While the bus driver was contacting the dispatch center, the officer boarded the bus and presented the suitcase to the passengers, informing them that the claim tag was missing and requesting that the owner of the luggage come with him so that a new claim tag could be attached. Defendant stepped forward and agreed to accompany the officer back to the garage so that a new claim tag could be attached. Once in the garage, the officer identified himself as a law enforcement officer and asked Defendant if she would consent to a search of the suitcase. Defendant agreed and opened the suitcase. The officer discovered several brick-shaped objects and asked Defendant if they were drugs. Defendant admitted that it was cocaine and informed the officers that she was being paid between five and six thousand dollars to transport the cocaine. The officers escorted Defendant to the police station where Defendant signed a form waiving her rights and gave a statement to the officers. Defendant was arrested for possession with the intent to distribute a schedule II controlled substance, possession of a schedule II controlled substance, and a special offender charge regarding the importation of a schedule II controlled substance into Colorado.

Before trial, Defendant filed a motion to suppress and a suppression hearing was held. At the conclusion of this hearing, the trial court issued an oral ruling granting the motion. Although the court found that the dog sniff of Defendant's suitcase was not a search, it ruled that the suitcase was unlawfully seized in violation of Defendant's Fourth Amendment rights. Specifically, the court determined that the officers seized Defendant's suitcase "by taking possession of it, inspecting it," and "alter[ing] it" by removing a claim tag. (R. at vol. II, p. 109.) The court found that the seizure was unlawful because probable cause was absent. The court did not make a finding of whether the seizure was an investigative detention supported by reasonable suspicion. The court did note that although the chemical odor being emitted from the bag "might have constituted a reasonable suspicion, ... [it was] not enough to create probable cause to believe that the bag contained evidence of a crime or contraband." (R. at vol. II, p. 108.) With respect to the officers' other observations, the court noted that "the size of the bag, the weight of the bag, the lock [on] the bag, the lack of a luggage I.D. or name, are insignificant [sic] grounds to cause reasonable suspicion." (R. at vol. II, p. 108.)

After concluding that the officers' actions constituted an unlawful seizure, the court next found that Defendant's consent to search the suitcase was ineffective since it was attributable to a prior illegality, the unlawful seizure. Further, it ruled that the statement Defendant made to police was also obtained in violation of Defendant's rights under the Fourth Amendment, since it too had arisen out of the unlawful seizure of Defendant's suitcase. Accordingly, the trial court suppressed the contents of Defendant's suitcase and her statement to police.

## II. ANALYSIS

### A. SEIZURE OF DEFENDANT'S SUITCASE

In reviewing suppression appeals, we recognize that a "court's findings of historical fact are entitled to deference by a reviewing court and will not be overturned if supported by competent evidence in the record." *People v. Quezada,* 731 P.2d 730, 732 (Colo.1987). In reviewing a court's conclusions of law, however, we apply a de novo standard of review to ascertain whether its legal conclusions are supported by sufficient evidence and whether it has applied the correct standard. *People v. Rivas,* 13 P.3d 315, 319 (Colo.2000); *People v. Winpigler,* 8 P.3d 439, 444 (Colo.1999) (a trial court's legal conclusions are subject to de novo review).

Here, the state challenges the trial court's conclusion that the drug task force officers seized Defendant's suitcase without probable cause by removing the claim tag from it, by inspecting it, and by taking possession of it.[2] We now review whether the officers' conduct resulted in an unlawful seizure of Defendant's suitcase. Because the issue of whether an unreasonable seizure occurred is a question of law, our review is de novo. *People v. Hopkins,* 870 P.2d 478, 482 (Colo.1994).

### 1. REMOVAL OF CLAIM TAG FROM DEFENDANT'S SUITCASE

The Fourth Amendment to the United States Constitution provides for "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures...."[3] U.S. Const. amend. IV. The Supreme Court has defined seizure of property to mean a "meaningful interference with an individual's possessory interests" in property. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *accord Place,* 462 U.S. at 707–08, 103 S.Ct. 2637 (property is seized when a police officer exercises control over the property by removing it from an individual's possession); *Hale v. Henkel,* 201 U.S. 43, 76–77, 26 S.Ct. 370, 50 L.Ed. 652 (1906) (a seizure "contemplates a forcible dispossession of the owner"). In this context, no seizure occurs when an officer merely picks up an individual's property to look at it because this interference with the individual's possessory interest is not meaningful. *Arizona v. Hicks,* 480 U.S. 321, 324, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). We also note that whether law enforcement officers' conduct results in a seizure of a defendant's property is a fact-sensitive inquiry. *Florida v. Bostick,* 501 U.S. 429, 435–39, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (the determination of whether a particular investigative strategy used to interdict drugs at a bus depot or airport is a seizure is a fact-sensitive inquiry).

In this case, the court's ruling that the officers seized Defendant's suitcase was based in part on its finding that they altered the suitcase by removing the claim tag attached to it. Specifically, the trial court found that Defendant had an expectation of privacy in the claim tag, and that its removal caused a seizure of the suitcase. We disagree. Neither the United States Supreme Court nor this court has held that the removal of a bus company's claim tag constitutes a seizure under the Fourth Amendment.

It is well established that travelers have a reasonable expectation of privacy in their personal luggage, which the Fourth Amendment protects. *Bond v. United States,* 529 U.S. 334, 336–37, 120 S.Ct. 1462, 146 L.Ed.2d 365 (2000); *United States v. Chadwick,* 433 U.S. 1, 13, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), *overruled in part on other grounds, California v. Acevedo,* 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). This expectation of privacy, however, does not extend to a claim tag attached to the outside of luggage by a third party. A

---

**2.** Specifically, the trial court concluded that there was a seizure because the officers "seized [the suitcase] by taking possession of it, inspecting it, and then most importantly, I think they altered it [by removing Greyhound's claim tag from the suitcase]." (R. at vol. II, p. 108.) The court also noted that "there was then further seizing [of the suitcase] by Investigator Miller,

[by] carrying it onto the bus." (R. at vol. II, p. 111.)

**3.** We note that article II, section 7 of the Colorado constitution also provides protection against unreasonable government searches and seizures. Colo. Const. art. II, § 7.

claim tag is plainly visible to others and thus any expectation of privacy one might have in a claim tag cannot be deemed reasonable. *See Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (only reasonable expectations of privacy are protected and "[w]hat a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection").

Even if we were to find that Defendant had an expectation of privacy in the claim tag, the officers' removal of the tag was not a seizure of the suitcase. At most, it was a seizure of the claim tag. As stated above, a seizure occurs where there is some "meaningful interference with an individual's possessory interests" in property. *Jacobsen*, 466 U.S. at 113, 104 S.Ct. 1652. Although Defendant had a possessory interest in her suitcase, we cannot say that removing Greyhound's claim tag interfered with that interest. In summary, we hold that Defendant did not have an expectation of privacy in the claim tag and that the officer's removal of the tag did not result in a seizure of her suitcase.

## 2. INSPECTION AND MOVEMENT OF THE SUITCASE

Although courts have not had cause to address the precise investigative strategy employed by the officers in this case, courts have confronted the issue of whether the handling of luggage at bus depots and airports constitutes a seizure under the Fourth Amendment. These cases indicate that moving luggage around, inspecting it, and subjecting it to dog sniffs and field tests does not result in a seizure. In *United States v. Hall*, the Tenth Circuit held that a government agent's "lifting" of the defendant's suitcase found in the luggage compartment of a train was not a seizure because the intrusion was minimal. 978 F.2d 616, 619 (10th Cir. 1992); *United States v. Johnson*, 990 F.2d 1129, 1132 (9th Cir.1993) (removal of checked bag from luggage cart to office held not a seizure where delay was brief); *United States v. Graham*, 982 F.2d 273, 274 (8th Cir.1992) (movement of luggage from overhead racks to floor of bus for drug sniff was not a seizure because interference was minimal); *United States v. Harvey*, 961 F.2d 1361, 1363–64 (8th Cir.1992) (same); *United*

*States v. Cagle*, 849 F.2d 924, 926–27 (5th Cir.1988) (removal of luggage from conveyer belt not a seizure).

 The Supreme Court, moreover, has explicitly held that under the United States Constitution subjecting luggage to dog sniffs does not constitute a search or seizure.[4] *Place*, 462 U.S. at 696, 103 S.Ct. 2637 (dog sniff of a person's luggage is only minimally intrusive and is not a Fourth Amendment search); *United States v. Nicholson*, 144 F.3d 632, 636 (10th Cir.1998) (sniffs and field tests, which reveal only whether an illegal substance may be present and little else, do not compromise a legitimate expectation of privacy); *Merrett v. Moore*, 58 F.3d 1547, 1553 n. 11 (11th Cir.1995) ("use of dogs on the exterior of cars constitutes no search"). Nor does a search or seizure occur where officials detect the odor of illegal drugs by using their own sense of smell. *United States v. Burns*, 624 F.2d 95, 101 (10th Cir.1980).

Although moving luggage short distances and subjecting luggage to brief dog sniffs and field tests do not result in a seizure, investigative strategies that go beyond this generally become intrusive and invoke the Fourth Amendment. *See, e.g., Place*, 462 U.S. at 708–09, 103 S.Ct. 2637; *Bond*, 529 U.S. at 334, 338–39, 120 S.Ct. 1462 (a government agent's squeezing and feeling of defendant's duffel bag "in an exploratory manner" constituted a search under the Fourth Amendment). In *Place*, the Court found that where police took possession of luggage, detained it for ninety minutes, and moved it from La Guardia to Kennedy Airport a seizure occurred. 462 U.S. at 698–99, 708, 103 S.Ct. 2637. In *Jacobsen*, the Court concluded that a seizure occurred where government agents asserted dominion and control over a package by detaining it for a period of several hours. 466 U.S. at 114–15, 104 S.Ct. 1652.

 In this case, Defendant's suitcase was initially removed from a luggage compartment and subjected to a sniff test. Under the case law cited above, these actions clearly did not constitute a seizure. However, the officers' investigation did not end with the dog sniff and inspection. Instead, the

4. But see *People v. Boylan*, 854 P.2d 807, 810 (Colo.1993), holding that under Article II, section 7 of the Colorado Constitution a dog sniff of a federal express package was a search.

officers detained the suitcase for further investigation. One of the officers carried it out of the garage to the bus, which the passengers had now boarded. As part of a ruse to identify the owner, the officer boarded the bus in a Greyhound uniform, still holding the suitcase, and asked the owner of the suitcase to come forward. Once the officer identified Defendant as the owner of the suitcase, he asked her to come with him so that a new claim tag could be attached to the suitcase. The officer, accompanied by Defendant, carried the suitcase back to the garage where Defendant was then questioned.[5] We hold that under these circumstances, there was a seizure of Defendant's suitcase because the officers' conduct caused a "meaningful interference" with Defendant's possessory interests in the suitcase, *Jacobsen,* 466 U.S. at 113, 104 S.Ct. 1652, and the officer exercised control over Defendant's property. *Place,* 462 U.S. at 707–08, 103 S.Ct. 2637.

This case then is unlike the case law discussed above in which courts held that there was not a seizure. In those cases, the government agents moved luggage a short distance, from a conveyer belt, luggage compartment, or overhead rack to the floor, for an immediate inspection or dog sniff test. *Johnson,* 990 F.2d at 1132 (removing checked bag from luggage compartment not seizure); *Harvey,* 961 F.2d at 1363–64 (temporary movement of luggage from overhead racks to floor of bus for drug sniff was not a seizure); *Graham,* 982 F.2d at 274 (same); *Cagle,* 849 F.2d at 926–27 (removal of luggage from conveyer belt did not result in a seizure, however, "agents' prolonged detention of the suitcase surely did"). Here, the officers took possession of the suitcase and their actions

interfered with Defendant's rights under the Fourth Amendment.

## B. INVESTIGATIVE SEIZURE OF DEFENDANT'S SUITCASE

▮ In general, the Supreme Court has held that a seizure is constitutionally infirm unless the seizing officer had probable cause. *Place,* 462 U.S. at 701, 103 S.Ct. 2637; *see also People v. Grazier,* 992 P.2d 1149, 1153 (Colo.2000) (requirement of probable cause "is the principal protection against governmental intrusion upon a person's reasonable expectation of privacy"). In this case, the trial court determined that probable cause was absent. We agree that the officers' initial inspection of Defendant's suitcase did not give rise to probable cause.

▮ Our inquiry, however, does not end here. The United States Supreme Court has also held that "[t]he Fourth Amendment is not, of course, a guarantee against *all* searches and seizures, but only against *unreasonable* searches and seizures." *United States v. Sharpe,* 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *accord Elkins v. United States,* 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures."). A seizure may still be reasonable under the Fourth Amendment even in the absence of probable cause. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

▮ In *Terry* and its progeny the Supreme Court held that a temporary, investigative detention of a person or property,[6] although a seizure lacking probable cause,[7] is

---

**5.** We note that the trial court ruled that there had not been a seizure of Defendant's person because the Defendant was free to leave at any time. We agree. Questioning suspects and requesting consent to search their luggage is not a seizure under the Fourth Amendment provided that the encounter is consensual. *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

**6.** We note that in *Terry,* the Court only addressed the investigative detention of an individual's person, not his property. 392 U.S. at 24, 88 S.Ct. 1868. However, the Court later extended *Terry* to include temporary, investigative seizures of objects. *Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110.

**7.** In *Terry,* the Court made it clear that an investigative detention is still considered a "seizure" under the Fourth Amendment:

There is some suggestion in the use of such terms as "stop" and "frisk" that such police conduct is outside the purview of the Fourth Amendment because neither action rises to the level of a "search" or "seizure" within the meaning of the Constitution. We emphatically reject this notion. It is quite plain that the Fourth Amendment governs "seizures" of the person which do not eventuate in a trip to the station house and prosecution for crime. It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person.

constitutionally permissible if there exists, at the time of the detention, a reasonable suspicion [8] that the person detained is involved in criminal activity. 392 U.S. at 24, 88 S.Ct. 1868; *see also Michigan v. Summers*, 452 U.S. 692, 698–700, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). In determining whether a detention is reasonable, a court must weigh the governmental interests alleged to justify the intrusion against the nature and quality of the intrusion on the individual's Fourth Amendment interests. *Place*, 462 U.S. at 703, 103 S.Ct. 2637. When the detention is minimally intrusive, the opposing law enforcement interests can support a seizure based on less than probable cause.

Applying these principles to this case, we now examine whether the officers' conduct was such as to place the seizure within the general rule requiring probable cause, or within the exception to that rule as adopted in *Terry*. We begin by addressing the state's alleged governmental interest in the detection of drug trafficking. It is well established that detection of drug trafficking may justify an investigative seizure. As observed in *United States v. Mendenhall*, 446 U.S. 544, 561, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (Powell, J., concurring), "[the] public has a compelling interest in detecting those who would traffic in deadly drugs for personal profit." Moreover, the Court has previously stated, "Because of the inherently transient nature of drug courier activity at airports, allowing police to make brief investigative stops of persons at airports on reasonable suspicion of drug-trafficking substantially enhances the likelihood that police will be able to prevent the flow of narcotics

into distribution channels." *Place*, 462 U.S. at 704, 103 S.Ct. 2637. Thus, it is clear that the officers' conduct in this case served to further an important public interest.

We next examine the nature and quality of the intrusion on Defendant's rights under the Fourth Amendment. Defendant asserts that the seizure went beyond the scope of an investigative detention and cites *United States v. Place* as support for this proposition.[9] We conclude that the officers' conduct in this case is distinguishable from the conduct of the government agents involved in *Place*. First, the record indicates that the officers' detainment of Defendant's suitcase in this case lasted between twenty and thirty minutes, not ninety minutes, as was the case in *Place*.[10] 462 U.S. at 710, 103 S.Ct. 2637. Further, the record shows that the officers' actions in no way delayed the departure of Defendant's bus. Rather, the officers' inspection of the luggage occurred while the bus was being serviced and their questioning of Defendant occurred while the bus driver was speaking with a dispatcher. According to the record, Defendant's bus did not leave until after Defendant consented to the search. (R. at vol. II, p. 62.)

In *Place*, moreover, the government agents transported the defendant's suitcase from La Guardia Airport to Kennedy Airport because of a failure on their part to pursue the investigation diligently.[11] *Id.* Here, the officer carried the suitcase a distance of about two hundred feet, and unlike in *Place*, the officers at all times acted in a diligent manner they inspected Defendant's suitcase, subjected it to a quick dog sniff, and then

*Terry*, 392 U.S. at 16, 88 S.Ct. 1868.

**8.** The requirement of reasonable suspicion contemplates a lesser quantum of proof as compared to probable cause. *Terry*, 392 U.S. at 27, 88 S.Ct. 1868.

**9.** In *Place*, the Court ultimately held that the detention was not reasonable because the police conduct exceeded the bounds of a permissible investigative detention of the luggage. 462 U.S. at 709–10, 103 S.Ct. 2637. This conclusion was required, according to the Court, because of the duration of the seizure, and the fact that the police failed to pursue the investigation diligently. *Id.* The Court also suggested that the detention in that case was unreasonable because it

interrupted the defendant's travel. *Id.* at 708, 103 S.Ct. 2637; *United States v. Tavolacci*, 895 F.2d 1423 (D.C.Cir.1990) (detention more likely to pass muster if it "did not interfere with the defendant's travel plans").

**10.** The officer estimated that he boarded the bus with Defendant's suitcase fifteen to twenty minutes after the bus arrived at the bus depot. He estimated that Defendant consented to the search about two minutes after exiting the bus.

**11.** Specifically, in *Place* the government agents planned hours in advance to inspect the defendant's luggage at La Guardia and yet failed to have a dog available to perform a sniff test. 462 U.S. at 709–10, 103 S.Ct. 2637.

immediately set out to identify the owner of the suitcase.

■ Finally, in *Place* the Court recognized that the intrusion on possessory interests occasioned by a detention of one's personal effects can vary both in its nature and extent, 462 U.S. at 705, 103 S.Ct. 2637, and that where the owner has relinquished control of his property to a third party, there is less of an intrusion than where the property is taken from the immediate custody and control of the owner. *Id.; see also United States v. Lovell,* 849 F.2d 910 (5th Cir.1988). Here, Defendant surrendered her suitcase to Greyhound, and it was then taken by the officers from Greyhound's custody. It was not taken from Defendant's immediate possession.

Because we find that the nature and quality of the intrusion on Defendant's Fourth Amendment rights was minimal, and that there was a legitimate governmental interest involved, we hold that the officers' conduct resulted in an investigative detention, requiring reasonable suspicion.

### C. OFFICERS' REASONABLE SUSPICION

■ Having found that the officers' conduct constituted a temporary, investigative detention, we now consider whether there was reasonable suspicion to support the detention of the suitcase. Although reasonable suspicion requires more than a hunch, *People v. May,* 886 P.2d 280, 282 (Colo.1994), the requisite "level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The Supreme Court has held that reasonable suspicion requires that detaining officers have "a particularized and objective basis for suspecting" the person detained. *United States v. Cor-*

*tez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

■ In determining whether reasonable suspicion exists, a court must examine the totality of the circumstances known to the government agents at the time of the detention. *Sokolow,* 490 U.S. at 8, 109 S.Ct. 1581; *Cortez,* 449 U.S. at 417, 101 S.Ct. 690. A court, moreover, examines the totality of the circumstances in the context of law enforcement officers' special training and experience. *United States v. Brignoni–Ponce,* 422 U.S. 873, 884–86, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Bowles,* 625 F.2d 526, 533–34 (5th Cir.1980). Observations that seem innocuous to ordinary citizens, may "appear suspect to one familiar with the practices of narcotics couriers." *United States v. Glover,* 957 F.2d 1004, 1010 (2d Cir.1992); *accord United States v. Smith,* 201 F.3d 1317, 1321 (11th Cir.2000) ("[W]e view the totality of the circumstances in the light of the officers' special training and experience."); *United States v. Gonzalez,* 969 F.2d 999, 1004 (11th Cir.1992) ("The officers' experience may be considered in determining probable cause. Conduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer.").

Here, the record reflects that both of the drug task force officers had received considerable training in drug interdiction.[12] As part of this training, the officers had learned to identify "indicators" of luggage containing illegal narcotics. Defendant's luggage exhibited several indicators. The suitcase emitted a strong chemical odor; was relatively new and expensive; was unusually heavy; had an unusually large lock; and had no tags identifying its owner.[13] The officers knew from their training that chemical odors were often used to mask the odor of drugs and reduce the effectiveness of sniff screens.[14] In addi-

---

12. One of the officers testified that he had "been through an Operation Pipe Line Course dealing with highway, bus, [and] airport interdiction. Also, Operation Jet Way in San Diego, dealing with airport and bus interdiction; several highway interdiction courses; a course with the D.E.A. on basic narcotics work and handling surveillance and informants...." (R. at vol. II, p. 9–10.)

13. One of the officers testified that "oftentimes the drug couriers will not put their name on luggage, to avoid detection." (R. at vol. II, p. 11.)

14. One of the officers testified that, "In my experience, in most cases there is some kind of masking odor around surrounding the drugs to allow [sic] the odor from escaping and being detected by dogs or law enforcement." (R. at vol. II, p. 11.)

tion, the officers knew that the bus was arriving from Los Angeles, California, a known "source city" for narcotics. *See United States v. Bowles,* 625 F.2d 526, 534 (5th Cir.1980) (finding that the fact that suspect was traveling from Los Angeles, a known drug source city, was "not an insignificant factor"); *see also United States v. Alpert,* 816 F.2d 958, 961 (4th Cir.1987) (noting that "all of the tickets were from Miami to New York, source and distribution cities for drugs"). Any one of these factors would not by itself constitute proof of illegal conduct; however, taken together they amount to reasonable suspicion. *See Sokolow,* 490 U.S. at 9–10, 109 S.Ct. 1581 ("Indeed, *Terry* itself involved 'a series of acts, each of them perhaps innocent' if viewed separately, 'but which taken together warranted further investigation.' "). Because we conclude that the officers' conduct resulted in a temporary, investigative detention supported by reasonable suspicion, we hold that the district court erred in granting Defendant's motion to suppress.

We next note that the trial court found that Defendant's consent to search the suitcase was made voluntarily and without coercion, and that her statement to police was obtained after a valid waiver of her *Miranda* rights. According to the trial court, however, because the seizure of the suitcase was unlawful, Defendant's consent to search the suitcase and her statement made to police were tainted by a prior illegality. Hence, the court suppressed the contents of the suitcase as well as Defendant's statement. Since we find that the seizure was a lawful investigative detention, we hold that this evidence was not seized as a result of a prior illegality, and thus should not have been suppressed.

### D. CONCLUSION

In summary, we hold that although the drug task force officers' conduct resulted in a seizure of Defendant's suitcase, it did not rise to the level of a full-blown seizure requiring probable cause. Instead, we hold that the officers' actions amounted to a temporary, investigative detention of property under *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). We find, moreover, that there was reasonable suspicion to support the investigative detention. Since the seizure was lawful, Defendant's

consent to search her suitcase and her statement made to police were not attributable to a prior illegality. Accordingly, we now order that the trial court vacate its order barring such evidence, and remand the case for further proceedings consistent with this opinion.