The PEOPLE of the State of Colorado,
Plaintiff–Appellant

v.

Randy D. TALLENT, Defendant–Appellee.

No. 07SA233.

Supreme Court of Colorado,
En Banc.

Jan. 14, 2008.

Larry R. Abrahamson, District Attorney, Eighth Judicial District, Loren B. Schall, Senior Appellate Deputy District Attorney, Fort Collins, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, State Public Defender, Norm Townsend, Deputy State Public Defender, Fort Collins, Colorado, Attorneys for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

The People bring this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), C.R.S. (2007), to reverse a trial court ruling suppressing physical evidence obtained during the detention of a car owned by Randy Tallent ("Tallent"). The trial court's ruling to suppress physical evidence was based on its finding that officers did not have probable cause to seize the car for purposes of a later search.

We find that the trial court erred when it analyzed the detention of Tallent's car under the probable cause standard. Because officers initially did not enter the car and instead merely stood watch over it for a short time, the proper standard of review was the reasonableness of the officer's suspicion that the car was involved in criminal activity. Officers act with reasonable suspicion when they possess knowledge that would make a prudent officer believe criminal activity is at hand. Because we conclude that the purpose of the detention was reasonable, the officers' actions were limited in both intrusiveness and duration, and that these actions led immediately to additional evidence of Tallent's criminal behavior, we hold that the officers had reasonable suspicion to temporarily seize Tallent's car. Thus, we reverse the trial court's order suppressing items found in the car.

## I. Facts and Procedural History

On the evening of January 11, 2007, Tallent was arrested in the old-town section of Fort Collins. Officer Andy Leslie ("Leslie") and other officers from the Fort Collins Police Department testified to the following facts during a suppression hearing. Early in the evening, Leslie received a verbal complaint from a local resident that a dark, two-door car had been parking in the handicapped spot near a parking garage off College Avenue. In response, Leslie staked out the alley parking lot on the 700 block of Laurel Street between College Avenue and Remington Street. At approximately 11:30 p.m., Leslie saw a black, two-door car with dark tinted windows driving down the alley toward him from the south. Believing the car might be the one alleged to have been parking illegally, Leslie followed the car when it turned right onto Laurel Street going east. Leslie testified that he then lost the car at a traffic light one-half block later. Leslie proceeded to turn right and drive several blocks south down Remington Street looking down the side streets for the black two-door before circling back to his original position in the alley. Upon returning to the alley, Leslie testified that he saw a person standing near a garage halfway down the alley. When the person noticed the patrol car coming toward him, he suddenly ran behind a house on the Remington Street side of the alley. The person jumped the backyard fence of the residence at 719 Remington Street. Leslie ordered the person to stop, called for backup, and gave pursuit. By the time Leslie reached the backyard, the suspect had disappeared, but Leslie was able to follow the person's footprints in the snow. He radioed to other officers that the suspect was on Remington Street. Another officer, responding to the call, found the trail and tracked the footprints to 705 Remington Street. There, he located Tallent laying face-down on the front porch.

Tallent was placed under arrest. The arresting officer handcuffed Tallent before patting him down. The officer found a keychain with a keyless car remote, two cellular phones, and over $800 cash in Tallent's pants pocket. The arresting officer asked Tallent for his name. The officer then called in the name and was informed that there was a felony warrant for Tallent's arrest. The court record does not indicate the nature of this felony warrant or whether the officers were informed about the basis for the felony warrant. When Leslie arrived at the scene,

he took the keyless remote and began pressing the "unlock" and "remote start" buttons. Another officer radioed Leslie that an empty car parked a few doors down flashed its lights and the ignition turned over, starting the car. When Leslie joined the other officer at the car, he immediately noticed footprints leading away from the car that matched the tread of the shoes worn by Tallent when he was arrested.[1] Officer Aliya Gasca ("Gasca") stayed with the car while Leslie and two other officers followed the footprints around a house and over a fence to a detached garage in the alley behind 719 Remington Street, where Leslie originally saw the suspect. There, the officers found the garage door ajar and fresh snow prints leading inside. Believing that additional suspects might be inside, officers drew their guns and entered the garage. There was no one in the garage, but officers found tracks leading to a pile of tools, covered by a grey tarp. Officers also found numerous other tools, electronic equipment, backpacks, clothes, and a portable space heater. An officer knocked on the residence at 719 Remington and asked for the phone number of the owner. After talking to the rental company, the police were given permission to search the garage. Upon closer inspection, several of the tools under the tarp, including a band saw, acetylene torches, and plumbing tools, had the name "Stan Harris" painted on them. Officers called the dispatcher and were given the phone number of a local contractor, Stanley Harris. Officers called Harris, who reported that several of his tools had been stolen from a construction site the night before.

In the meantime, Gasca and another officer looked inside the car with their flashlights. They could see stereo components on the floorboards of the passenger side, an iPod nano on the seat, and tools and other electronics in the backseat. When Leslie returned, he gave Gasca the keys to Tallent's Ford Probe. Approximately two hours later, Gasca opened the driver's door and drove it to the police station some ten blocks away, where she and another officer inventoried the car. During the inventory search, the officers found various electronics, tools, and a 9mm pistol.

The district attorney filed an affidavit requesting that a magistrate issue a search warrant for the car and its contents. The magistrate issued the search warrant. A tow truck then transported the car to a commercial car lot where it was held for two weeks until detectives returned with the warrant to search the car.

Based on the evidence found in the car and the garage, Tallent was charged with theft, theft by receiving stolen goods, burglary, trespassing, possession of a deadly weapon by a felon, and possession of a controlled substance. At a motions hearing, Tallent moved to suppress the search of his car and all items found in his car, claiming that the warrantless seizure and search of the car violated Tallent's Fourth Amendment right to be protected from illegal search and seizure.

Citing a lack of probable cause, the trial court agreed with Tallent and suppressed the contents of the car. The court found that there was no evidence that the car Officer Leslie followed before seeing Tallent in the alley was Tallent's car, or that Tallent was ever seen driving the car. The court specifically found that it "is just not workable or credible that there would have been enough time for the defendant to have ... made that turn and then to back-in and fully park, [and] get out ... before Officer Leslie came around the corner." The court concluded that Officer Leslie seized the car before undertaking an investigation to develop the probable cause necessary for such a seizure. While the court did not specify when the seizure occurred, it implied that the seizure occurred sometime between the taking of Tallent's keys and the moving of the car. Finally, the court found that when officers seized Tallent's car, they had no information that Tallent stole the car or that it was used in furtherance of that illegal activity. The court did not consider whether the early seizure of the car before the investigation

---

1. Leslie later testified that he believed the 1994 black Ford Probe with tinted windows parked in front of 721 Remington Street was the vehicle that he had followed out of the alley minutes earlier.

was completed was a temporary seizure supported by reasonable suspicion.

Thus, the court ruled in Tallent's favor, finding that officers had no basis for "locating and seizing the car." Specifically, the court found that there was no probable cause or other basis to support lawful seizure of the car. Consequently, the trial court concluded that the warrantless search of the car violated Tallent's Fourth Amendment right against illegal search and seizure.

The People brought this interlocutory appeal. They ask that we reverse the trial court's ruling suppressing the product of the search of Tallent's car.

## II. Analysis

We must determine whether the court erred in suppressing the search of Tallent's car. First, we analyze the court's application of the probable cause standard to the initial seizure of the car. Finding that this was the incorrect analysis, we then consider whether the police could briefly detain the car based on reasonable suspicion that it was involved in criminal activity. We find that officers did possess the reasonable suspicion necessary to detain the car for a short time while officers investigated the scene.

■ The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *See also* Colo. Const. art. II, § 7. To ensure reasonableness, the Fourth Amendment generally requires law enforcement officers to secure a warrant before seizing another's personal property. However, there are occasions where the search or seizure is so unobtrusive that it is not unreasonable to conduct it without a warrant. *See United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). For instance, in *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that a seizure of a person may still be reasonable under the Fourth Amendment, even in the absence of probable cause. Specifically, the Supreme Court found that temporary, investigative detention of persons can be constitutionally permissible, even in the absence of probable cause, if the officers have reasonable suspicion that the person detained was involved in criminal activity. 392 U.S. at 24, 88 S.Ct. 1868; *see also Michigan v. Summers*, 452 U.S. 692, 699–700, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981). The Supreme Court later extended this analysis to include temporary investigatory detentions of property. *United States v. Place*, 462 U.S. 696, 706, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983).

■ In *Place*, the Supreme Court found that the temporary, limited detention of a person's luggage was permissible with less than probable cause in light of the reasonable suspicion standard established in *Terry*. *Place*, 462 U.S. 696, 705–06, 103 S.Ct. 2637, 77 L.Ed.2d 110. We have adopted the Supreme Court's analysis in *Place* extending to police the right to temporarily detain personal property for limited purposes. *People v. Ortega*, 34 P.3d 986 (Colo.2001). To determine what qualifies as a limited purpose allowing the police to argue a legitimate government interest in seizing property, we look at the nature and quality of the intrusion. *Place*, 462 U.S. at 703, 103 S.Ct. 2637; *see also Ortega*, 34 P.3d at 993. Where the intrusion is too great or extends for too long, the officers' actions are unreasonable under the Fourth Amendment in the absence of a probable cause. *Place*, 462 U.S. at 710, 103 S.Ct. 2637. In cases where the seizure is minimally intrusive, however, officers are permitted to temporarily seize property for purposes of investigation based on less than probable cause. *Ortega*, 34 P.3d at 993.

In the present case, neither party argued, nor did the court consider, whether the officers' seizure of Tallent's vehicle constituted a temporary, investigatory seizure under this court's *Ortega* analysis. Instead, the parties argued whether there was probable cause to seize the car and when that probable cause was properly developed. The prosecution focused on the information available toward the end of the ongoing investigation, and the defense focused on the relatively scant information available early in the investigation. In suppressing evidence found in Tallent's car, the trial court found no probable cause

at an early, but not specific, time in the investigation. As we discuss, however, this is the incorrect analysis.

■ Probable cause refers to the reasonable belief that evidence exists establishing the basis to arrest, conduct a personal or property search, or obtain a warrant. *People v. Lucero,* 174 Colo. 278, 483 P.2d 968 (1971). However, an initial, brief encounter with a person or property may not require probable cause. Instead, a prudent officer acting with sufficient reasonable suspicion to believe criminal activity is afoot may temporarily detain persons or property without probable cause. *Ortega,* 34 P.3d at 994. Here, we encounter just such a circumstance. Officers were engaged in a developing investigation in which the information known by the police grew as the seizure became more lengthy and intrusive. In these circumstances, the investigating officers may temporarily seize property based on reasonable suspicion while additional information justifying a full seizure is gathered, if the purpose of the seizure is reasonably related in scope and character to the nature of the investigation, and the initial seizure is for a brief period of time.

Our analysis of the facts in *Ortega* is instructive. There, drug interdiction agents temporarily seized from a Greyhound bus a suitcase that met several indicators that it contained illegal drugs. *Id.* However, the officers lacked probable cause to search the bag. After the defendant identified herself as the owner of the suitcase, officers asked for permission to search it. The defendant agreed to the search. Officers opened the bag and found several bricks of cocaine. *Id.* Prior to trial, the defendant argued that officers did not have probable cause to seize the bag. *Id.*

In citing the Supreme Court's analysis in *Place,* we held that the limited, temporary detention of property thought to be evidence of a crime was permissible even in the absence of probable cause. *Id.* at 995. However, we were careful to specify that such a detention should be truly limited both in terms of time and intrusiveness. *Id.* at 993 n. 6. To determine the nature and quality of the intrusion, we looked to several factors, including but not limited to whether the police had a compelling reason for detaining the property, how long the property was detained, whether police forced the defendant to relinquish the property, and whether the property was moved a significant distance. *Id.* at 994.

We applied these factors in *Ortega,* finding that the officers seized the suitcase after they noted several indicators of illicit drugs, detained the suitcase for approximately twenty to thirty minutes, and only carried it away a short distance. *Id.* at 993–94. We also found that the officers did not forcibly take the property from the defendant. *Id.* at 994. To the contrary, we held that the defendant was completely unaware that officers had seized the property until just before her arrest. Thus, we concluded that in light of the limited intrusion, officers acted within the reasonableness requirement set forth by the Supreme Court's decision in *Place.*

■ Applying our holding in *Ortega* to the present facts, we now examine whether the officers acted reasonably when they used the keyless remote to unlock, as well as start, Tallent's car, and stood watch over the car while the scene was secured. To do this, we first consider the officers' interest in seizing the car. Based on his testimony to the trial court and his affidavit to the magistrate, Leslie began pressing buttons on the keyless remote in an effort to determine if Tallent's car was in the immediate vicinity, believing that Tallent's actions, the time of day and weather conditions, coupled with the felony warrant for his arrest, and the large sum of money and cellular phones found on his person during the arrest indicated that he likely had a car in the vicinity and was involved in criminal activity. Walking up to the car, Leslie immediately saw footprints in the snow matching Tallent's shoe tread, which Leslie reasonably believed indicated that Tallent was trespassing across the residence at 719 Remington Street. Still unaware of why Tallent ran from police, the officers decided to stay with but not enter the car while other officers continued the investigation. Upon following the tracks to the garage behind 719 Remington Street, officers found several sto-

len tools, not dissimilar to the items visible through the windows of Tallent's car.[2]

Based on the criteria set out in *Ortega*, we find that the temporary detention of Tallent's car by using the keyless remote and staying with the running car was not unreasonable. We come to this conclusion based on the following facts. First, Leslie used the keyless remote to determine if the car was in the immediate vicinity. Then, an officer merely stayed with the car while Leslie and others sought an explanation to why Tallent evaded police. Further, while Leslie did start the engine and unlock the doors by use of the keyless remote, officers did not enter or move the car until the investigation uncovered the warrant for Tallent's arrest, as well as the stolen goods in the garage matching those in the car. Finally, the car was parked on a public street, in plain view of the officers. It was not forcibly removed from Tallent, nor was he ordered to exit the car so that officers could take possession of it.

In light of these facts, we find that officers possessed knowledge sufficient to induce a prudent officer to reasonably suspect that Tallent's car was involved in criminal activity when it was temporarily seized for the limited purpose of securing the area for the brief period of time necessary to continue an ongoing investigation. Given its limited purpose and duration, the initial seizure was not unreasonable.

### III. Conclusion

Because we find that officers acted reasonably when they detained Tallent's car while securing the scene and collecting evidence, we reverse the trial court's order suppressing evidence found in the defendant's car.

2. While not at issue in the present case, it is well-established that officers are not undertaking a search when they use a flashlight to look through a car window into the interior of a car. *People v. Dickinson*, 928 P.2d 1309, 1312 (Colo.1996).