The PEOPLE of the State of Colorado, Plaintiff–Appellant

v.

Benjamin Vester HUGHES, Defendant–Appellee.

The People of the State of Colorado, Plaintiff–Appellant

v.

Martha Meza–Reyes, Defendant–Appellee.

Nos. 11SA21, 11SA42.

Supreme Court of Colorado, En Banc.

June 6, 2011.

Carol Chambers, District Attorney, Eighteenth Judicial District, Andrew Cooper, Chief Deputy District Attorney, David Jones, Senior Deputy District Attorney, Centennial, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Colorado State Public Defender, Michael A. Faye, Deputy State Public Defender, Centennial, Colorado, Attorneys for Defendant–Appellee Benjamin Vester Hughes.

Law Offices of Miguel Martinez, P.C., Miguel Martinez, Daniel R. Wingler, Denver, Colorado, Attorneys for Defendant–Appellee Martha Meza–Reyes.

Justice MARTINEZ delivered the Opinion of the Court.

## I. Introduction

Two interlocutory appeals are before us, *People v. Hughes* and *People v. Meza–Reyes,* where the People seek review of trial court orders suppressing evidence on the basis that the officers failed to comply with the requirements of *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In both cases, the People make the same argument: the trial court applied an incorrect legal standard in suppressing the evidence,

either explicitly or implicitly conflating the standard for Fourth Amendment seizures with the standard for custodial interrogations under *Miranda*. Because both cases turn on this same issue—one we have addressed before—we consider these cases together, and we agree with the People: the trial courts have applied an incorrect legal standard. Hence, we reverse the suppression orders.

## II. Factual Backgrounds

### A. *People v. Hughes*

In *People v. Hughes*, the People have charged the defendant, Benjamin Hughes, with having committed sexual assault and domestic violence. Making few, if any, factual findings relating to its *Miranda* custody determination, the trial court suppressed statements the defendant made to a police officer, determining that the officer should have given the defendant *Miranda* warnings.

Three officers went to the defendant's home to investigate a call of domestic violence. One officer went inside to interview the victim, while the other two were standing in the driveway. The defendant then voluntarily approached the driveway and waited with the two officers for less than ten minutes until the officer who had interviewed the victim came and interviewed him. During this interview, the defendant allegedly made incriminating statements, after which he was arrested.

The officers, either while standing outside with the defendant on the driveway or while interviewing him, did not pat down, search, or otherwise physically constrain him. They spoke in a conversational tone, never ordering him to stay in the driveway, and never telling him that he was under arrest until after the interview. Although the officers, while waiting outside with the defendant, had decided to detain him if he tried to leave, this decision was not communicated to the defen-

dant, and nothing was done to compel him to remain.

The trial court suppressed the statements the defendant made to the interviewing officer about the incident on the basis that he was in custody for purposes of *Miranda:* "I find that a reasonable person under the same set of circumstances, that they would believe they were not allowed to leave, and therefore he was in custody." In making this determination, the trial court considered the officers' subjective intent: "I believe that the officers clearly felt that he was in custody, that they were prepared to arrest him at that moment in time with or without any statements."

### B. *People v. Meza–Reyes*

In *People v. Meza–Reyes*, the People are charging the defendant, Martha Meza–Reyes, with identity theft. In its suppression order—containing few, if any, findings of fact on the question of *Miranda* custody—the trial court suppressed the defendant's negative answer to the question of whether she was in the country legally, which was obtained by a police officer who pulled the defendant over for running a red light after the defendant produced what the officer described as a "non-government Mexico style photo ID card."[1] The officer asked additional questions and received answers about the defendant's name, where she was going, and where she worked, but when the officer probed further, the defendant declined to answer, wanting first to speak to an attorney. At that point the officer arrested the defendant for running the red light and failing to provide the officer proof of insurance and a driver's license. Subsequent investigation by the police officer led to charges of identity theft, as the defendant had allegedly forged documents necessary to work.

---

1. We are not unaware that an Arizona statute, which removes the judgment officers generally exercise and mandates that all officers ascertain the immigration status of every person stopped, detained, or arrested so long as the officers reasonably suspect that the person stopped is "unlawfully present in the United States," has been enjoined by federal courts on preemption grounds. *United States v. Arizona*, 703

F.Supp.2d 980, 996–98 (D.Ariz.2010) *aff'd*, 641 F.3d 339, 347–55 (9th Cir.2011), 2010 Ariz. Sess. Laws Ch. 113, 211 (codified as amended at Ariz. Rev.Stat. Ann. § 11–1051(B) (2010)). Nothing before us suggests that the officer's question of the defendant was required by any state law or policy, or otherwise raises the issues surrounding this Arizona statute.

The trial court held that, based on the running of the red light, the officer had reasonable suspicion to conduct an investigatory traffic stop and ask the defendant about her name, where she worked, where she was going, and request her driver's license, vehicle registration and insurance. But the trial court determined that the subsequent questions asked the defendant were impermissible without further advisement of her rights.

### III.  Miranda Standards

Trial courts are "obliged to apply the correct legal standard to its factual findings" in resolving suppression motions. *People v. Humphrey*, 132 P.3d 352, 360 (Colo. 2006) (quoting *People v. Gennings*, 808 P.2d 839, 844 (Colo.1991)). On review of a trial court's suppression order, we review de novo whether the trial court has applied the correct legal standard. *People v. Ortega*, 34 P.3d 986, 990 (Colo.2001).

Custodial interrogation under *Miranda* must be distinguished from a "seizure" under the Fourth Amendment. We have previously recognized that even though a person may be "seized" within the meaning of the Fourth Amendment, "this does not necessarily mean that the suspect is 'in custody' for purposes of *Miranda*." *People v. Breidenbach*, 875 P.2d 879, 885 (Colo.1994); *see also People v. Polander*, 41 P.3d 698, 705 (Colo.2001). Under the Fourth Amendment, a person may challenge a government action when a police officer, "by means of physical force or show of authority, terminates or restrains [that person's] freedom of movement through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (quotations omitted). Such a seizure occurs if, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Id.* at 255, 127 S.Ct. 2400; *see also People v. Paynter*, 955 P.2d 68, 72 (Colo.1998) ("Unless the circumstances of the encounter are so intimidating as to demonstrate that a reasonable person would believe he is not free to leave if he does not comply, one cannot say that questioning results in a seizure protected by the Fourth Amendment.").

The test for custodial interrogation under *Miranda* is different. The fundamental question in determining whether a suspect is in custody for purposes of *Miranda* is "whether a reasonable person in the suspect's position would believe himself to be deprived of his freedom of action to the degree associated with a formal arrest." *People v. Hankins*, 201 P.3d 1215, 1218 (Colo.2009) (quoting *People v. Matheny*, 46 P.3d 453, 467 (Colo.2002)). The protections afforded by *Miranda* "only apply when a suspect is subject to both custody and interrogation." *Effland v. People*, 240 P.3d 868, 873 (Colo.2010); *see also People v. Wood*, 135 P.3d 744, 749–50 ("*Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300–01, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980))).

Because of the difference between Fourth Amendment "seizure" and *Miranda* custodial-interrogation, investigatory stops and detentions often fall short of implicating *Miranda*, as they are usually brief encounters, involving no weapons, "and an atmosphere which is less threatening than that surrounding the kinds of interrogation at issue in *Miranda*." *Breidenbach*, 875 P.2d at 885–86. Investigatory stops and detentions only implicate *Miranda* "when police detain a suspect using a degree of force more traditionally associated with concepts of 'custody' and 'arrest' than with a brief investigatory detention." *Id.* at 886.

Furthermore, as pertinent here, whether a person is in custody for purposes of *Miranda* is an objective inquiry, based on the totality of the circumstances, and guided by many factors, *Matheny*, 46 P.3d at 467, none of which, however, are subjective, *People v. Cowart*, 244 P.3d 1199, 1203 (Colo. 2010). "In particular, the court may not consider the 'unarticulated thoughts or views of the officers and suspects' because the custody test is objective in nature." *Id.* (quoting *People v. Hankins*, 201 P.3d 1215, 1219 (Colo.2009)); *see also Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) ("Our decisions make

clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned."); *Matheny*, 46 P.3d at 468. It is only when an officer's knowledge or beliefs are conveyed, by word or deed, to the individual being questioned that such knowledge or belief may bear upon the custody issue, and even then are "relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her 'freedom of action.'" *Stansbury*, 511 U.S. at 325, 114 S.Ct. 1526 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)).

Looking at the two trial-court suppression orders before us, it is clear that the trial courts failed to properly apply the standards governing custodial-interrogations under *Miranda*. In *People v. Hughes*, the trial court explicitly applied the wrong standard. The trial court based its custody determination on its finding that reasonable persons under the same set of circumstances "would believe they were not allowed to leave." This is the standard governing Fourth Amendment seizures, not the standard governing custody under *Miranda*. In addition, the officers' subjective views appeared to have played a significant role in the trial court's custody determination, as the court stated that, "I believe that the officers clearly felt that [the defendant] was in custody, that they were prepared to arrest him at that moment in time with or without any statements." These subjective views, absent evidence that they were ever communicated to the defendant, may not be considered for purposes of *Miranda*. Similarly, in *People v. Meza–Reyes*, the trial court appears to have assumed that the defendant was in custody under *Miranda* during the investigatory stop but before she was arrested. But as described above, just because a defendant is detained in an investigatory stop does not mean he or she is in custody for purposes of *Miranda*.

Although the investigatory stops here constitute seizures for Fourth Amendment purposes, the trial courts' orders, which make no findings of fact on the issue, provide no sup-

port for the conclusions that the defendants were in custody for purposes of *Miranda*. Hence, both trial courts failed to apply the correct legal standard under *Miranda* and erred by concluding the defendants were in custody for purposes of *Miranda*.

## IV. Conclusion

Accordingly, we reverse the trial courts' suppression orders.