**PEOPLE of the State of Colorado,
Plaintiff–Appellant,**

v.

**Kenneth MAY, Defendant–Appellee.**

**No. 94SA261.**

Supreme Court of Colorado,
En Banc.

Dec. 19, 1994.

A. William Ritter, Jr., Dist. Atty., Second Judicial Dist., Nathan B. Coats, Chief Deputy Dist. Atty., Henry R. Reeve, Deputy Dist. Atty., Denver, for plaintiff-appellant.

Lozow, Lozow and Elliot, Gary Lozow, Blain Myhre, Denver, for defendant-appellee.

Chief Justice ROVIRA delivered the Opinion of the Court.

The People in this interlocutory appeal challenge the district court's suppression of an Express Mail package containing narcotics found during a dog-sniff search. The People argue the district court erred in finding that the postal inspector did not have a reasonable suspicion for the search. We agree and reverse the court's order suppressing the evidence and remand for further proceedings consistent with this opinion.

## I.

On January 4, 1994, the defendant Kenneth May (defendant) telephoned the Denver Air Mail Center on two occasions to inquire about an Express Mail package sent from New York. A clerk at the center described the defendant as highly agitated about a package which purportedly contained baby formula. The defendant offered to drive from Alamosa to Denver to pick it up, a distance of 235 miles one-way.

The clerk reported the defendant's calls as suspicious to his supervisor who in turn called Inspector Earl Winsor of the United States Postal Inspection Service. Upon location of the package, Inspector Winsor examined it and concluded it contained a "suspicious lumpy type powdery material," comparable to narcotics. Inspector Winsor had his secretary verify the return address on the package.[1] The secretary notified him the address was in fact a New York City address belonging not to Russo but to two businesses, a candy store and a hairstylist. He testified that his suspicion of narcotics was further aroused by the use of Express Mail costing $9.95 to send under two ounces of baby formula from New York when the formula was probably readily available in Colorado.

At approximately 11:45 a.m., Inspector Winsor had a dog sniff the package. The dog's response indicated the package contained narcotics. A search warrant was obtained and the inspector found slightly over a half gram of heroin in ten bindles in a small brown envelope inside the original mailing package. The defendant was arrested and charged with unlawful distribution, manufacturing, dispensing, sale and possession of a controlled substance and as a special offender. §§ 18–18–405 & –407, 8B C.R.S. (1994 Supp.). He filed a motion to suppress the package and its contents. The district court granted the motion after concluding that the dog sniff was a search not supported by reasonable suspicion.

## II.

■ We have developed a two-prong test to determine whether a defendant's constitutional rights are violated by allowing a dog sniff of an Express Mail package. First, the defendant must have a reasonable expectation of privacy with regard to the contents of the Express Mail package. If not, the dog sniff would not be a search. Second, the search must be reasonable. *People v. Boylan,* 854 P.2d 807, 810 (Colo.1993).

## A.

■ The defendant must have a reasonable expectation of privacy in the package in order for the dog sniff to constitute a search.

1. The address was to a Mr. Louis Russo, 200    Clinton Street in New York City.

The court held in Boylan that the use of a drug-sniffing dog to determine the contents of a Federal Express package, although minimally intrusive, invaded the addressee's constitutional privacy interest. The facts before the court are similar to Boylan except the package was sent through the U.S. Post Office rather than by private courier. We find this distinction inconsequential. The drug was sent in a sealed package with its contents hidden from view. The defendant had a constitutional privacy interest in the package. Therefore, the dog sniff amounted to a search.

### B.

■ A dog-sniff search must be reasonable to avoid violating a defendant's constitutional rights. To be reasonable, a government agent must have a reasonable suspicion that a package contains narcotics prior to the dog-sniff search. Boylan, 854 P.2d at 810; People v. Wieser, 796 P.2d 982 (Colo.1990). To satisfy this burden, the state must show the agent had "specific and articulable facts, which taken together with reasonable inferences from these facts, give rise to a reasonable suspicion." Boylan, 854 P.2d at 811. Reasonable suspicion does not equal probable cause but must be more than a mere hunch. Id. at 812.

■ The district court granted the motion to suppress after comparing the facts in Boylan to the present case and finding no similarity. In Boylan, the police received two tips that the defendants were engaged in drug trafficking. A confidential informant disclosed that one defendant would be transporting cocaine from New York via the airlines. Here, unlike Boylan, the court found the postal inspector had no specific information that either the sender of the package in New York or the addressee in Alamosa was involved in narcotic activity. The court ruled

that feeling a package and finding powder therein did not amount to reasonable suspicion.

■ The district court failed to consider the totality of the circumstances in granting defendant's motion. To determine whether reasonable suspicion exists, the court must consider the facts and circumstances known to the government agent. People v. Coca, 829 P.2d 385, 387 (Colo.1992) (quoting People v. Savage, 698 P.2d 1330, 1335 (Colo.1985)). In making his decision to order the dog-sniff search, the inspector relied on the defendant's conduct, an examination of the package, and inferences from the surrounding circumstances.[2] Each piece of information separately may not amount to reasonable suspicion. However, the combination of the three satisfies the reasonable suspicion standard. Boylan, 854 P.2d at 812.

First, the defendant called the mail center twice and alerted a clerk to the package addressed to him. The defendant claims the clerk solicited the second call and therefore it could not be deemed suspicious.[3] It was not the defendant's call to check on the package that the clerk found suspicious. Numerous people call to check on undelivered packages. However, during the calls, the defendant volunteered to drive 235 miles in the middle of winter to retrieve baby formula that would arrive in a day. The clerk described the defendant as highly agitated and very excited. It was the defendant's actions during the two calls that constituted the suspicious behavior.

Second, Inspector Winsor examined the package and concluded it contained a suspicious powdery material. The defendant argues baby formula is no less of a powdery substance than narcotics so the fact the inspector felt a powdery substance did not raise a reasonable suspicion. He claims that the inspector concluded sending baby formula through the mail was per se suspicious, regardless of the circumstances.

United States v. Lux, 905 F.2d 1379 (10th Cir. 1990).

**2.** United States postal inspectors look for the following to detect if Express Mail packages are likely to contain illegal drugs: (1) the size and shape of the mailing; (2) heavily taped packages; (3) handwritten labels; (4) unusual return name addresses; (5) unusual odors coming from packages; (6) fictitious return addressee; (7) origination and destination of parcel. United States v. Hill, 701 F.Supp. 1522, 1526 (D.Kan.1988), aff'd

**3.** During the first call, the clerk told the defendant to call back if the package did not arrive on the flight scheduled to reach Alamosa at 10:00 a.m.

The proper inquiry is not whether an act can be characterized as innocent, such as sending baby formula *via* Express Mail. Rather, the question is whether a degree of suspicion attaches to the act, even if the act is later determined innocent. *See United States v. Sokolow,* 490 U.S. 1, 10, 109 S.Ct. 1581, 1587, 104 L.Ed.2d 1 (1989). Inspector Winsor investigates drug trafficking through the mail and has inspected items suspected of containing narcotics on thirty-five occasions in a four-year period. His experience with narcotics and their transport supports the conclusion the package contained a suspicious material. Inspector Winsor did not find sending baby formula through the mail was *per se* suspicious. He found sending only two ounces of baby formula from New York suspicious. He surmised the package's weight and material were consistent with the shipment of narcotics rather than baby formula.

Third, Inspector Winsor drew reasonable inferences from the facts available to him. The package had a suspicious return addressee. The return address of the package belonged to two businesses, a hairstylist and a candy store, not to the person listed on the package. The inspector reasonably suspected the address was false because hairstylists and candy stores usually do not sell baby formula. Also, the package was mailed from New York City which has a reputation as a source city of drug distribution. *See United States v. Alpert,* 816 F.2d 958, 961 (4th Cir. 1987).

■ The inspector properly inferred suspicion from the payment of an Express Mail charge for baby formula. Baby formula is generally not a specialty item requiring express delivery across the country, especially for such a small amount.[4] The inferences drawn from the facts known to the inspector supported his suspicion that the package contained narcotics.

The postal inspector had specific articulable facts on which to base his reasonable suspicion that the Express Mail package contained narcotics. Therefore, he properly ordered a dog-sniff search to establish probable cause for a search warrant to open the package.

### III.

We conclude the totality of the circumstances demonstrates the inspector had reasonable suspicion that the package contained narcotics prior to the dog-sniff search. We reverse the order to suppress and remand the case to the district court for further proceedings consistent with this opinion.

VOLLACK, J., specially concurs in the result only.

ERICKSON, J., joins in the special concurrence.

Justice VOLLACK specially concurring in the result only:

I agree with the majority's conclusion that, based on the facts of this case, the postal inspector had a reasonable suspicion that the Express Mail package contained narcotics. Accordingly, the district court erred in suppressing the package of narcotics found during a dog sniff. I disagree, however, with the court's conclusion that the dog sniff amounted to a search. Maj. op. at 282.

Consistent with my dissenting opinion in *People v. Boylan,* 854 P.2d 807 (Colo.1993), I write separately to reiterate my long-standing position that a dog sniff is not a search within the purview of either the Fourth Amendment to the United States Constitution or Article II, Section 7, of the Colorado Constitution. I continue to believe that the United States Supreme. Court's decision in *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), and our decision in *People v. Wieser,* 796 P.2d 982, 985 (Colo.1990), are dispositive on this issue.

The United States Supreme Court has spoken on canine sniffs in *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), where the Court determined that a dog sniff of luggage at an airport for narcotics did not constitute a

---

4. The defendant argues the inspector made assumptions without inquiring whether baby formula was reasonably available. The reasonable

suspicion standard allows a government agent to make reasonable inferences.

"search" within the meaning of the Fourth Amendment to the United States Constitution. The Supreme Court reasoned as follows:

We have affirmed that a person possesses a privacy interest in the contents of personal luggage that is protected by the Fourth Amendment. A "canine sniff" by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of the luggage. Thus, the manner in which information is obtained through this investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited.

*Id.* at 707, 103 S.Ct. at 2644 (citation omitted).

In my opinion, *Place* applies regardless of the circumstances surrounding the dog sniff.

In *People v. Wieser*, 796 P.2d 982, 985 (Colo.1990), we held that a dog sniff for narcotics conducted outside of an individual's storage locker did not constitute a search under either the United States or the Colorado Constitution.

Under the facts of this case, the dog sniff occurred because the postal inspector had a reasonable suspicion that the Express Mail package contained drugs. In my view, a canine sniff of luggage at an airport, of a locker, or of a package at a post office is not a search within the meaning of the United States or the Colorado Constitution because the dog sniffs not the contents of the package, but only the air surrounding the package, in which there is no reasonable expectation of privacy. *See Boylan*, 854 P.2d at 813 (and cases cited therein at 814) (Vollack, J., dissenting) (dog-sniff to determine contents

of express carrier package is not a search); *see also People v. Salih*, 219 Cal.Rptr. 603, 173 Cal.App.3d 1009 (1985) (finding that a canine sniff of a United Parcel Service package is not a search); *State v. Hammond*, 1993 WL 189563 (Del.Super.Ct.1993) (same); *State v. Snitkin*, 67 Haw. 168, 681 P.2d 980 (1984) (holding that a canine sniff of all the packages in a cargo holding room of a Federal Express office which was used to identify rather than verify a package containing contraband, even though the Drug Enforcement Agency officer had no reason to suspect that any particular package contained drugs, is not a search within the constitutional proscription of the Fourth Amendment to the United States Constitution or Article 1, Section 7, of the Hawaii Constitution).

I am authorized to say that Justice ERICKSON joins in this special concurrence.