The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Dedrick HALEY, Defendant–Appellee.

The People of the State of Colorado, Plaintiff–Appellant,

v.

Gene Dunlap, Defendant–Appellee.

The People of the State of Colorado, Plaintiff–Appellant,

v.

Larry Daniels, Defendant–Appellee.

Nos. 01SA148, 01SA149, 01SA150.

Supreme Court of Colorado, En Banc.

Nov. 27, 2001.

Frank J. Daniels, District Attorney, 21st Judicial District, Brian J. Flynn, Deputy District Attorney, Grand Junction, CO, Attorneys for Plaintiff–Appellant.

Nugent & Palo, LLC, Edward J. Nugent, Grand Junction, CO, Attorneys for Defendant–Appellant Dedrick Haley.

David S. Kaplan, Colorado State Public Defender, Frederick M. Callaway, Deputy State Public Defender, Grand Junction, CO, Attorneys for Defendant–Appellant Gene Dunlap.

Colleen B. Scissors, Grand Junction, CO, Attorney for Defendant–Appellant Larry Daniels.

Justice HOBBS delivered the Opinion of the Court.

In these three consolidated interlocutory appeals, the prosecution challenges the trial court's suppression of evidence obtained as a result of a dog sniff search of a car after the reason for the traffic stop had been completed. In accordance with our prior case law interpreting Article II, Section 7 of the Colorado Constitution, a dog sniff search of an object can constitute a search requiring reasonable suspicion to justify the governmental intrusion. We agree with the trial court that the drug investigation in this case lacked reasonable suspicion and the dog sniff search of the automobile contravened protections of the Colorado Constitution.

## I.

These interlocutory appeals have been consolidated for opinion because they have identical facts and legal issues. Officer Mike Miller, a member of the Grand Valley Joint Drug Task Force, was performing highway drug interdiction on Interstate 70 in Mesa County on December 16, 2000, when he saw the defendants' automobile heading eastbound. Officer Miller thought that the vehicle was following the truck in front of it too closely, so he conducted a traffic stop. The statute for the offense of following too closely, section 42–4–1008, 11 C.R.S. (2001), states in part, "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." In the automobile were three African–Americans, Dedrick Haley, Gene Dunlap, and Larry Daniels. Officer Miller approached the vehicle and asked the driver, Haley, for his license and registration. Haley produced his Kansas driver's license and a rental agreement for the car. Officer Miller told Haley he thought he was following the truck in front of him too closely. He asked Haley to come with him to the patrol car; Haley complied.

In response to Officer Miller's questioning, Haley explained that he was coming from Sacramento, California, where he had visited friends for a few days, and was now heading home to Kansas. Haley stated that he and his passengers had flown to Sacramento, but could not afford to fly back home, so they rented a car. Officer Miller noticed that the cost of the rental car was approximately $600 a week, and the car had been rented the previous day at the Sacramento airport for a week. Throughout this conversation, Officer Miller observed several nervous behaviorisms: Haley's hands were shaking, he was licking his lips indicating that his mouth was dry, he was stuttering, and he was shuffling his feet.

Because Haley had not provided him with the vehicle registration, Officer Miller returned to the vehicle and asked Dunlap to find it in the glove compartment. In response to Officer Miller asking Dunlap where he was going, Dunlap did not answer and exhibited shaking hands and a facial twitch. Daniels also did not answer the question until Officer Miller suggested the answer Haley had given, that they were going home. Daniels agreed with the officer's suggestion.

After Dunlap handed him the registration document, Officer Miller returned to Haley to give him back his paperwork. According to Officer Miller, Haley was walking in circles and appeared nervous. Officer Miller decided not to issue him a citation for the traffic offense and told Haley he was free to go, but immediately following thereafter, he asked Haley whether he "had any drugs or anything illegal in the vehicle." Haley said no. Next, according to Officer Miller, Haley consented to a dog sniff search of the luggage, saying, "Do you want to check it out?" Officer Miller asked for consent to have the dog sniff the car also, Haley said no. Haley removed three bags from the trunk of the car, and placed them about five feet away from the rental car.

The dog did not alert to the luggage. Officer Miller then proceeded with the dog towards the vehicle, despite Haley's vehement protests. The dog alerted to several places around the car. Haley yelled, "What are you doing searching my car?" The dog stopped sniffing the car and moved to protect Officer Miller, the dog's handler. Officer Miller then placed the dog inside the police vehicle and called for assistance. Officer Daley responded to the call. Officer Miller also called Detective Norcross via Nextal, a police network system.

During this time, Haley managed to hide a bottle of tequila under Miller's patrol vehicle. Haley and Officer Miller talked for about ten minutes until the other two officers arrived. Officer Miller asked Haley about the tequila and requested identification from the other men in the car to establish their age. They supplied the identification.

Upon the other officers' arrival, Officer Miller asked Haley if he had any weapons. Haley said no; one of the officers patted him down, finding no weapon. The police asked Daniels to get out of the vehicle; they found no weapons on him. The police then asked Dunlap to get out of the vehicle. Officer Miller noticed that Dunlap was trembling and had a large bulge in his waistband. Patting down Dunlap, the police found a package in his waistband that appeared to contain drugs.

Officer Miller attempted to place Dunlap under arrest; Dunlap resisted. A struggle ensued involving Dunlap, Haley, and the police. Daniels was not involved. Dunlap fled the scene on foot. Officer Daley chased after Dunlap on foot. Dunlap threw Christmas stockings into the brush. Officer Daley apprehended Dunlap. The police recovered the stockings, which contained kilo-sized bricks of cocaine. Daniels made a statement after signing a *Miranda* waiver.

The police placed the three men under arrest. The prosecution charged them with several offenses.[1] Haley, Dunlap, and Daniels pleaded not guilty and requested a jury trial. The trial court conducted a pretrial motions hearing on May 11, 2001. The trial court judge ordered the evidence suppressed on grounds of an illegal search. The trial court ruled that a dog sniff of an automobile from its exterior to detect substances therein constitutes a search under Article II, Section 7, of the Colorado Constitution, and that reasonable suspicion, rather than probable cause, must support it. The trial court determined that the police did not have reasonable suspicion for the drug investigation after the reason for the traffic stop had been concluded; consequently, it suppressed the evidence.

## II.

We hold under Article II, Section 7, of the Colorado Constitution that the prolonged police detention and investigation of the persons and automobile for illegal substances, after the consensual dog sniff of the luggage proved to be negative, was a search and seizure not supported by reasonable suspicion. Consequently, the trial court properly suppressed the evidence the police obtained after the reason for the traffic stop had concluded.

### A.

#### Standard of Review

■ When reviewing a trial court's suppression order, we defer to its findings of fact, but review its conclusions of law de novo. *Outlaw v. People*, 17 P.3d 150, 157 (Colo.2001); *People v. Garcia*, 11 P.3d 449, 453 (Colo.2000). We must determine on appeal whether the trial court applied the correct legal standards to the facts of the case,

1. The prosecution charged Haley, Dunlap, and Daniels with the following offenses: Possession of a Schedule II Controlled Substance Intent to Distribute (1,000 Grams or More), § 18–18–405(3)(a)(III), 6 C.R.S. (2001); Conspiracy to Distribute a Schedule II Controlled Substance, § 18–18–405(2)(a)(I), 6 C.R.S. (2001); Special Offender Import a Schedule II Controlled Substance, § 18–18–407(1)(d)(Sentence Enhancer), 6 C.R.S. (2001); Second Degree Assault on a Peace Officer, § 18–3–203(1)(c), 6 C.R.S. (2001); two counts of Attempted Second Degree Assault on Peace Officer, § 18–3–203(1)(c) and 18–2–101, 6 C.R.S. (2001); three counts of Resisting Arrest, § 18–8–103, 6 C.R.S. (2001); three counts of Obstructing a Peace Officer, § 18–8–104, 6 C.R.S. (2001); Tampering with Physical Evidence, § 18–8–610(1)(a), 6 C.R.S. (2001); and Following Too Closely, § 42–4–1008(1), 11 C.R.S. (2001).

and whether sufficient evidence in the record supports its legal conclusions. *People v. Rivas,* 13 P.3d 315, 320 (Colo.2000)("[T]he trial court's application of legal standards to those facts is treated as a question of law to be reviewed de novo."); *People v. Jordan,* 891 P.2d 1010, 1015 (Colo.1995). The legality of the detention and search of these persons and their automobile is a question we review de novo. *See People v. Hopkins,* 870 P.2d 478, 482 (Colo.1994); *People v. McKinstrey,* 852 P.2d 467, 473 n. 6 (Colo.1993).

### B.

### Dog Sniff Searches

■ The Fourth Amendment to the United States Constitution and Article II, Section 7 of the Colorado Constitution protect a person's reasonable expectation of privacy from governmental intrusion. *See* U.S. Const. amend. IV; Colo. Const. art. II, § 7; *Katz v. United States,* 389 U.S. 347, 359, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *People v. Sporleder,* 666 P.2d 135, 139 (Colo.1983). The prosecution argues that the United States Supreme Court's interpretation of the Fourth Amendment in *United States v. Place,* 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), should apply here. In *Place,* the court held that exposing an individual's luggage located in a public place to a dog sniff did not constitute a "search" under the Fourth Amendment.[2] *Id.* at 707, 103 S.Ct. 2637.

Nevertheless, in applying Article II, Section 7 of the Colorado Constitution, we have ruled that Colorado law affords broader protections in some instances than the Fourth Amendment. *See People v. Oates,* 698 P.2d 811, 815 (Colo.1985)("Several times we have determined that the Colorado proscription against unreasonable searches and seizures protects a greater range of privacy interests than does its federal counterpart."); *People*

*v. Sporleder,* 666 P.2d 135, 140 (Colo.1983)("Although Article II, Section 7 of the Colorado Constitution is substantially similar to its federal counterpart, we are not bound by the United States Supreme Court's interpretation of the Fourth Amendment when determining the scope of state constitutional protections."); *see also People v. Mason,* 989 P.2d 757, 759 (Colo.1999)("[W]e have afforded suspects in Colorado greater rights than are available under the federal Constitution."); *People v. Young,* 814 P.2d 834, 842–43 (Colo.1991)("We have recognized and exercised our independent role on a number of occasions and on several have determined that the Colorado Constitution provides more protection for our citizens than do similarly or identically worded provisions of the United States Constitution.").

In some instances, we have determined certain investigative activities to be searches, even though the United States Supreme Court determined that they were not. *See Oates,* 698 P.2d at 816 (government-installed beeper in a 110 lb. drum of phenyl-acetic acid purchased from a chemical company was a search under Colorado Constitution); *Sporleder,* 666 P.2d at 139–40 (governmental installation of a pen register is a search under Colorado Constitution); *Charnes v. DiGiacomo,* 200 Colo. 94, 98–99, 612 P.2d 1117, 1120–21 (1980)(governmental seizure of bank records violated the Colorado Constitution).

Article II, Section 7 of the Colorado Constitution applies to the case before us. We therefore distinguish *Place,* and our recent ruling in *People v. Ortega,* 34 P.3d 986, 2001 Colo. LEXIS 783 (Colo.2001), both of which were decided under the Fourth Amendment and did not involve a prolonged traffic stop without reasonable suspicion to continue the investigation.[3] In *Place* and *Ortega* the police conducted dog sniff searches of luggage

---

2. We observe that the United States Supreme Court has held that exploration of the details of a private home from outside of it, utilizing a sensing device, is presumptively unreasonable without a warrant. *Kyllo v. United States,* 533 U.S. 27, 121 S.Ct. 2038, 2046, 150 L.Ed.2d 94 (2001). In our view, the logic of this holding undercuts the prosecution's argument that dog sniffs of the outside of an automobile to detect

the contents thereof do not fall within a reasonable expectation of privacy.

3. In *Ortega,* we held that a dog sniff of luggage on a Greyhound bus traveling interstate, while stopped at a bus terminal, was not a search under the Fourth Amendment, and we reserved the issue of the Colorado Constitution's applicability for a case raising it. *Ortega,* 34 P.3d at 991 n. 4, 2001 Colo. LEXIS 783, at *14 n. 4.

at an airport and on a Greyhound bus traveling interstate, respectively. We stated in *Ortega* that "the officers' actions in no way delayed the departure of Defendant's bus." *See Ortega*, 34 P.3d at 993, 2001 Colo. LEXIS at *21.

◼ Based upon our precedent under the Colorado Constitution, we conclude that a dog sniff search of a person's automobile in connection with a traffic stop that is prolonged beyond its purpose to conduct a drug investigation intrudes upon a reasonable expectation of privacy and constitutes a search and seizure requiring reasonable suspicion of criminal activity. Our holding here accords with cases we decided after *Place*. *See People v. May*, 886 P.2d 280, 282 (Colo.1994)(holding that a dog sniff of an express mail package was a search); *People v. Boylan*, 854 P.2d 807, 812 (Colo.1993)(holding that a dog sniff of a federal express package was a search); *People v. Unruh*, 713 P.2d 370, 377–78 (Colo.1986)(holding that a dog sniff search of a safe taken by a burglar from the defendant's home was a search); *see also People v. Redinger*, 906 P.2d 81, 85–86 (Colo.1995)(holding that reasonable suspicion is required to prolong a traffic stop after the purpose for which the investigatory stop was instituted has been accomplished).[4]

◼ An individual must have a reasonable expectation of privacy in order to succeed in a challenge based on illegal search or seizure. *Katz*, 389 U.S. at 353, 88 S.Ct. 507; *May*, 886 P.2d at 281; *Unruh*, 713 P.2d at 377. In evaluating the legitimacy of the defendant's constitutional privacy interest, the proper inquiry involves two parts: whether the defendant expected that his or her privacy interest would be free from governmental intrusion, and if so, "whether that expectation is one that society is prepared to recognize as reasonable." *Sporleder*, 666 P.2d at 140; *United States v. Nicholson*, 144 F.3d 632, 636 (10th Cir.1998). We have previously held that "whether an expectation of privacy is reasonable may be tested against the customs, values, and common understandings that confer a sense of privacy upon many of our basic social activities." *Oates*, 698 P.2d at 816.

◼ The prosecution argues that a dog merely enhances the olfactory senses of an officer, does not involve physical intrusion into a private area, and is minimally intrusive because all that the dog detects is in the air surrounding the object. We do not find this argument persuasive.[5] Here, in the absence of reasonable suspicion that illegal activity was occurring other than the traffic infraction, Officer Miller's sole purpose was to conduct a drug investigation and to detect whether evidence hidden from view was within the car. In *May*, we reasoned that such use of a drug dog amounted to a search because the defendant had a constitutional interest in a sealed package and the dog sniff of the package with its contents hidden from view amounted to a search. *May*, 886 P.2d at 282.

◼ While we acknowledge that automobiles enjoy a lesser expectation of privacy in our society than private homes, citizens have a reasonable expectation of privacy from search and seizure in their cars and in their persons as they travel the state's roads. *See New York v. Class*, 475 U.S. 106, 112, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986)("A citizen

---

4. The prosecution does not argue that we should overrule our prior cases, rather that the automobile was in a public place and the use of a dog to detect the odor of drugs was not a search under either the Fourth Amendment or Article II, Section 7 of the Colorado Constitution. In *People v. Reyes*, 956 P.2d 1254 (Colo.1998), we declined to address whether a dog sniff of an automobile's exterior constitutes a "search" that must be supported by a reasonable suspicion that the vehicle contains evidence of a crime. We now hold that our precedent of requiring reasonable suspicion for a dog sniff search, in combination with our precedent requiring reasonable suspicion to prolong a traffic stop after its original purpose has been accomplished, applies to this case.

5. We have rejected this logic previously. *See People v. Unruh*, 713 P.2d at 377 ("But the fact remains that each detects hidden objects without actual entry and without the enhancement of human senses. The fact that the canine's search is more particularized and discriminate than that of the magnetometer is not a basis for a legal distinction. The important factor is not the relative accuracy of the sensing device but the fact of the intrusion into a closed area otherwise hidden from human view, which is the hallmark of any search.")(quoting *United States v. Bronstein*, 521 F.2d 459, 464 (2d Cir.1975)(Mansfield, J., concurring)).

does not surrender all the protections of the Fourth Amendment by entering an automobile."). Even though police may search an automobile without a warrant following an arrest,[6] pursuant to a police inventory,[7] when they observe something in plain view,[8] or to secure the officer's safety,[9] these exceptions do not establish precedent for unconstrained police searches of automobiles. *See Sporleder,* 666 P.2d at 141 ("The mere fact that our ordinary social intercourse, uncontrolled by government, imposes certain risks upon us hardly means that government is constitutionally unconstrained in adding to those risks.").

■ Travelers on the roads of Colorado may reasonably expect that law enforcement officers may stop them for violating traffic laws; they do not expect that persons will be detained and their automobiles searched because of traffic stops once the reason for those stops has been accomplished. The intrusion is limited to the reason for the stop unless other circumstances or acts permit the intrusion to continue.

> During a valid traffic stop an officer may request a driver's license, vehicle registration and proof of insurance. An officer may also run a computer check for outstanding warrants so long as this procedure does not unreasonably extend the duration of the temporary detention. These intrusions are brief and minimal. Once a driver produces a valid license and proof that he is entitled to operate the vehicle, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.

*People v. Rodriguez,* 945 P.2d 1351, 1360 (Colo.1997) (citations and quotation marks omitted).

## C.

## The Dog Sniff Search In This Case

The prosecution argues that the use of a dog is not a search when the dog and its handler are lawfully in a public area. We disagree that this assertion applies here. The only reason the automobile stopped was because of Officer Miller's traffic stop. *Cf. People v. Wieser,* 796 P.2d 982, 986 (Colo. 1990)(where the object of a search was a public storage locker, the outside of which was made continually accessible to the public by virtue of a public right of way located next to it). The police detained this automobile for a drug search, just as they detained the objects involved in our *Boylan* and *May* cases.

### 1. Reasonable Expectation of Privacy

■ Under the doctrine of stare decisis, we follow the rule of law established in earlier cases "unless clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come from departing from precedent." *People v. Blehm,* 983 P.2d 779, 788 (Colo.1999). In *Unruh,* we rejected the prosecution's argument that a dog sniff search is always a reasonable intrusion. *Unruh,* 713 P.2d at 379. Recognizing that the United States Supreme Court has held differently under the Fourth Amendment, we nevertheless established that the balance between governmental and individual interests is best struck by requiring reasonable suspicion as a prerequisite to the dog sniff search of an object to which the defendant has a reasonable expectation of privacy. *Id.* We have adopted this Colorado Constitutional standard in cases that are analogous to stops of vehicles, name-

---

6. *See People v. Daverin,* 967 P.2d 629, 632 (Colo.1998)("Another well-recognized exception to the warrant requirement is a search undertaken incident to a lawful arrest.").

7. *See People v. Hauseman,* 900 P.2d 74, 77 (Colo.1995)(stating that "warrantless search of a vehicle lawfully impounded by law enforcement officials designed to produce an inventory of the contents of that vehicle and conducted pursuant to routine administrative procedures" is an exception to the warrant requirement).

8. *See People v. Kluhsman,* 980 P.2d 529, 534 (Colo.1999)(holding that "the observation of evidence in plain view is not a search for purposes of the Fourth Amendment and does not require a warrant").

9. *See People v. Clements,* 661 P.2d 267, 271 (Colo.1983)("We have held that a bona fide public emergency is a variant of the exigent circumstances exception to the warrant requirement. ... [T]he possibility of danger to police guarding the contraband while the warrant is being obtained" is one factor relevant to this exception).

ly, circumstances in which the possessor of the object searched had a reasonable expectation of privacy. *See May,* 886 P.2d at 282; *Boylan,* 854 P.2d at 810. In *Unruh,* we did not reach, but differentiated, dog sniff searches of luggage at airports or objects in public places from cases in which a reasonable expectation of privacy in the object triggers the requirement of reasonable suspicion for the dog sniff search. *Unruh,* 713 P.2d at 378 (analogizing to cases involving a *Terry* stop); *see Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

We ascertain no compelling reason for departing from our prior precedent under the Colorado Constitution. Our reasoning in prior cases involving dog sniff searches and prolonged traffic stops applies to the case before us. Accordingly, we determine that Haley, Dunlap, and Daniels possessed a privacy interest in their persons and vehicle being free from unreasonable governmental intrusion, and the drug investigation following the traffic stop in this case required reasonable suspicion for the dog sniff search to proceed. *See Boylan,* 854 P.2d at 811 ("[A] dog sniff search need not be justified by probable cause sufficient to obtain a search warrant, but instead only requires reasonable suspicion, similar to that required to stop and frisk a person suspected of involvement in imminent criminal activity."); *May,* 886 P.2d at 282; *Unruh,* 713 P.2d at 379; *see also Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "When, as here, the purpose for which the investigatory stop was instituted has been accomplished and no other reasonable suspicion exists to support further investigation, there is no justification for continued detention and interrogation of citizens." *People v. Redinger,* 906 P.2d 81, 85–86 (Colo.1995); *see People v. Ramos,* 13 P.3d 295, 298 (Colo.2000); *see also People v. Cervantes–Arredondo,* 17 P.3d 141, 147 (Colo. 2001). In *Redinger,* 906 P.2d at 86, we said that police conduct requiring additional information after the purpose of the initial investigation is satisfied is not justified in the absence of another basis for detention and questioning.

### 2. No Reasonable Suspicion

Reasonable suspicion warranting the continued investigation must be more than a hunch. *Boylan,* 854 P.2d at 812. Courts must consider the facts and circumstances known to the police officer at the time of the encounter in order to determine whether reasonable suspicion exists; this is an objective standard of reasonableness based on the circumstances known to the police at the time. *Outlaw v. People,* 17 P.3d 150, 157 (Colo.2001); *May,* 886 at 282. To satisfy its burden, the prosecution must show that the police had "specific and articulable facts which, when taken together with the reasonable inferences from these facts, give rise to a reasonable suspicion." *Boylan,* 854 P.2d at 811; *Unruh,* 713 P.2d at 379; *see also Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)(stating that "determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior").

At the suppression hearing, the trial court ruled that the police acted without reasonable suspicion. We agree. We determine here that the facts, when taken together, did not provide reasonable suspicion of criminal activity other than the traffic violation.

When reviewing a motion to suppress, "[w]e must defer to a trial court's findings of fact if those findings are supported by competent evidence in the record." *People v. Pitts,* 13 P.3d 1218, 1221 (Colo.2000); *see also People v. Medina,* 25 P.3d 1216, 1223 (Colo.2001). However, we must examine the trial court's legal conclusions de novo. *See Medina,* 25 P.3d at 1223. Like the trial court, we must review the totality of the circumstances known to the police officers at the time of the encounter to determine whether the police had reasonable suspicion to conduct a search and seizure. *Outlaw,* 17 P.3d at 157. Therefore, we examine the encounter between Haley, Dunlap, Daniels and Officer Miller.

First, as a preliminary matter, the police had justification to make the traffic stop. *See People v. Ramos,* 13 P.3d 295, 297 (Colo.2000)(holding that police officers are entitled to conduct an investigatory stop of a motorist if they have reasonable suspicion that the motorist has committed a traffic

violation); *People v. Rodriguez,* 945 P.2d 1351, 1355 (Colo.1997)(holding that if an officer possesses an objectively reasonable suspicion that a traffic offense has been committed, the officer may request identifying information from the driver). Officer Miller observed Haley following another vehicle too closely; thus he had reasonable suspicion to conduct the traffic stop. After a satisfactory examination of Haley's identifying information, Officer Miller told Haley he was free to go and obtained Haley's consent to search the luggage, which Haley proceeded to remove from the trunk of the car at the officer's request. The consensual search revealed no basis for reasonable suspicion, as the dog did not alert to the luggage.

The facts known to the police were: (1) Haley, Dunlap, and Daniels rented the car in Sacramento for one week and were traveling to Kansas City; (2) the driver and passengers looked very nervous; (3) they were traveling from Sacramento, California; (4) Dunlap and Daniels did not know where they were going; and (5) Haley consented to a dog sniff of the luggage but not the car.

■■■■ The fact that Haley, Dunlap, and Daniels rented the car in Sacramento for one week and were traveling to Kansas City did not provide a reasonable inference of criminal activity. Traveling cross-country in a rental car in the company of others is not suspicious behavior. Officer Miller stated that he found it strange for three people to fly one-way to a city and then pay approximately $600 to drive back, rather than purchase return flights. However, people can choose land travel over air travel because they are visiting friends or tourist sites, or simply because they do not want to fly. The choice of means of travel at any time on the journey does not lend support to reasonable suspicion. *See United States v. Wood,* 106 F.3d 942, 947 (10th Cir.1997)(finding that defendant's travel plans, flying one way to California and renting a car to drive back to Kansas, were not the sort of unusual plans that give rise to reasonable suspicion of criminal activity).

Officer Miller observed that Haley and his passengers all exhibited nervousness. However, it is "not uncommon for most citizens-whether innocent or guilty-to exhibit signs of nervousness when confronted by a law enforcement officer." *Wood,* 106 F.3d at 948; *see also United States v. Fernandez,* 18 F.3d 874, 879–80 (10th Cir.1994)(stating that "nervousness is of limited significance in determining reasonable suspicion" and that the government's repetitive reliance on nervousness as a basis for reasonable suspicion must be treated with caution).

■■■■ Officer Miller characterized California as a drug source, with a particular reference to San Diego.[10] There is no evidence in the record showing that Sacramento is a drug source; it is not close to an international border; nor, does this case involve an airport. We cannot assume as a basis for reasonable suspicion that cars traveling from California on I–70 in Colorado contain illegal drugs. Therefore, without further evidence showing that Sacramento is a drug source, this circumstance is of very little weight. *See Karnes v. Skrutski,* 62 F.3d 485, 496–96 (3d Cir.1995)("Florida is not the only 'known drug center,' and the mere fact that defendant was from Florida cannot be a factor supporting reasonable suspicion. Presumably the vast bulk of people with cars regis-

---

**10.** The record of the suppression hearing contained the following testimony:

Q: And in your capacity as an investigator with the Grand Valley Joint Drug Task Force, do you have specialized training in identifying people who may be transporting narcotics?
Officer Miller: Yes, I do.
Q: And was that part of your consideration about the fact that Mr. Haley said that he had flown to California and that they were driving back, were you thinking?
A: Yes, that's correct. That's oftentimes the mode of—of activity is to fly. And then to avoid

security, it's easier to drive—drive the drugs back.
. . . .
Q: Okay. And what are the characteristics of a drug courier?
A: Nervousness. Indicators to look for at traffic stops, odor, origination, destination.
Q: What about origination, destination?
A: Typically drugs won't be coming from, say, Denver to San Diego. San Diego the price is cheaper, and it would not serve any purpose to transport in that direction, usually comes from the southwest or from the south and inland.

tered in Florida are not drug smugglers, and they have a right to travel to Pennsylvania.").

██ The prosecution argues that Dunlap's and Daniels's failure to identify their destination supports reasonable suspicion of criminal activity. However, an examination of the record demonstrates that Dunlap did not respond to the question and Daniels agreed, after hesitating, with the officer's suggestion that he was going home.[11] This was a consensual interview. Daniels and Dunlap's silence or hesitation in responding is not an inconsistency supporting reasonable suspicion. *See Wood*, 106 F.3d at 947 (stating that inconsistent information provided to an officer during a traffic stop may give rise to reasonable suspicion, but Wood's error in identifying the city where he rented the car is "not the sort of inconsistency that warrants such a conclusion").

██ Evaluating the circumstances in totality, we conclude that the police in this case lacked reasonable suspicion of drug trafficking and incorrectly employed Haley's denial of permission to search the car as reasonable suspicion to prolong the traffic stop in order to conduct a drug investigation. "The failure to consent to a search cannot form any part of the basis for reasonable suspicion." *Wood*, 106 F.3d at 946; *see United States v. Dozal*, 173 F.3d 787, 794 (10th Cir.1999). Haley's conduct in reluctantly agreeing to a search of the luggage and refusing to consent to a search of the car is not a circumstance supporting reasonable suspicion. *See United States v. Hunnicutt*, 135 F.3d 1345 (10th Cir.1998)("Any other rule would make a mockery of the reasonable suspicion and probable cause requirements, as well as the consent doctrine. These legal principles would be considerably less effec-

tive if citizens' insistence that searches and seizures be conducted in conformity with constitutional norms could create the suspicion or cause that renders their consent unnecessary."); *Karnes*, 62 F.3d at 495 (holding that the fact that defendant granted consent to police to search some items and then refused to give consent to additional searches cannot support a finding of reasonable suspicion); *United States v. Carter*, 985 F.2d 1095, 1097 (D.C.Cir.1993)("The constitutional right to withdraw one's consent to search would be of little value if the very fact of choosing to exercise that right could serve as any part of the basis for finding the reasonable suspicion that makes consent unnecessary.").

██ "A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000).[12] The circumstances here did not give rise to justifying a drug investigation after the traffic violation investigation was concluded. *See May*, 886 P.2d at 282; *Boylan*, 854 P.2d at 812. In *Boylan*, we relied upon three facts for our determination of reasonable suspicion: first, a report of a civilian informant to a police detective that the defendant received cocaine shipments via Federal Express; second, the police had corroborating information from a confidential informant; and, third, a package addressed to Robyn Boylan came through the Federal Express office soon after the informants' information was provided. *Id.* at 811–12. We then held that "each separate item of information standing alone would not have amounted to reasonable suspicion. However, the three in combination clearly satisfy the reasonable suspicion requirement." *Id.* at 812. Here, the facts do not support reasonable suspicion. Allowing offi-

---

11. The record of the suppression hearing contained the following testimony:
Officer Miller: "... I asked [Dunlap] where he was headed to and where they were going."
Q: You asked Mr. Dunlap that.
A: That's correct.
Q: And did he respond to you at that time?
A: No. He—he didn't answer. He just made a long like, um just wouldn't answer me.
....
Q: And did you also ask Mr. Daniels where they were going?
A: Yes, I did. I asked him. And he looked up up towards the roof of his car and like he was

just thinking for a minute. And then I asked him, "You guys heading back home?" And eventually he said yes. He muttered something in between, but I didn't know what it was.

12. In *City of Indianapolis*, the Court found that the use of narcotics-detection dogs around the exterior of each car stopped at a highway checkpoint was not a search, but that the primary purpose of the checkpoint, drug interdiction, violated the Fourth Amendment. *City of Indianapolis*, 531 U.S. at 40–43, 121 S.Ct. 447.

cers to pursue a drug investigation without any individualized reasonable suspicion of criminal wrongdoing would subject travelers on our state's roads to unconstrained searches and seizures. *See Karnes v. Skrutski,* 62 F.3d at 495.

We determine that the facts in this case, when taken together, did not justify the police finding reasonable suspicion of criminal activity other than the reason for the initial traffic stop. We agree with the trial court that the dog sniff search of the automobile for illegal substances required but lacked reasonable suspicion, in violation of Article II, Section 7 of the Colorado Constitution.

### III.

Accordingly, we affirm the trial court's suppression orders, and return these cases to the trial court for further proceedings consistent with this opinion.

Justice KOURLIS dissents, and Justice RICE and Justice COATS join in the dissent.

Justice KOURLIS dissenting:

In my view, a dog sniff of the exterior of a car in a public place does not constitute a search within the meaning of the Fourth Amendment or Article II, Section 7 of the Colorado Constitution. Further, even if it were a search, I would find it here supported by the requisite reasonable suspicion and would therefore admit the evidence obtained from the search. Because the majority concludes that under Article II, Section 7 of the Colorado Constitution, a dog sniff of a person's automobile intrudes upon a reasonable expectation of privacy and constitutes a search, and because the majority discerns no reasonable suspicion, I respectfully dissent.

### I.

The purpose of both the Fourth Amendment of the United States Constitution and Article II, Section 7 of the Colorado Constitution is to protect a person's legitimate expectation of privacy from unreasonable governmental intrusion. *People v. Sporleder,* 666 P.2d 135, 139 (Colo.1983). In determining whether an expectation of privacy is legitimate, courts must determine whether a defendant manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring); *People v. Oates,* 698 P.2d 811, 814 (Colo. 1985).

In 1983, the United States Supreme Court concluded that a defendant did not have a reasonable expectation of privacy in the odors emanating from his luggage and that, therefore, a dog sniff of that luggage was not a search. *United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). While the Court acknowledged that a person possesses a privacy interest in the contents of personal luggage, it held that a canine sniff is "an investigative procedure that is so limited in both the manner in which the information is obtained and in the content of the information revealed by the procedure" that it does not constitute a search under the Fourth Amendment. *Id.* The Court specifically noted that a canine sniff is much less intrusive than a typical search because it does not require opening the luggage to reveal information about personal non-contraband items, but rather only discloses the presence or absence of an illegal substance. *Id.*

In a subsequent case, the United States Supreme Court observed that lawmakers have enacted laws against the private possession of cocaine, and that a test designed only to detect the presence of that substance did not invade a reasonable expectation of privacy. *United States v. Jacobsen,* 466 U.S. 109, 123, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Because the test did not reveal information that actually compromised any legitimate interest in privacy, the court concluded that the testing was not a search. *Id.* at 124, 104 S.Ct. 1652. Most recently in *City of Indianapolis v. Edmond,* 531 U.S. 32, 40, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000), the United States Supreme Court held that the dog sniff of a car is not a search.[1]

---

1. The majority suggests that the United States Supreme Court's recent decision in *Kyllo v. United States,* 533 U.S. 27, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001), supports a different approach

to the dog sniff at issue in this case than *United States v. Place* might otherwise dictate. To the contrary, I read *Kyllo v. United States* to express concerns not at issue in this case. In *Kyllo v.*

Most courts around the nation, both state and federal, have similarly held that the use of trained dogs to sniff for illegal drugs is not a search. *See State v. Scheetz*, 286 Mont. 41, 950 P.2d 722, 725 (1997) (noting that although states are free to grant citizens greater protection based on state constitutional provisions than the United States Supreme Court divines from the United States Constitution, most states that have addressed the use of drug-detecting canines have followed *United States v. Place* in holding that their use does not constitute a search); *see generally* Brian L. Porto, Annotation, *Use of Trained Dog To Detect Narcotics Or Drugs As Unreasonable Search In Violation Of Fourth Amendment*, 150 A.L.R. Fed. 399 (2001). Those courts reason that dog sniffs are not searches because they are only minimally intrusive and because they occur in places where individuals do not have heightened expectations of privacy. *E.g., United States v. Morales–Zamora*, 914 F.2d 200, 205 (10th Cir.1990) (holding that there is no intrusion on a legitimate privacy interest where a dog sniff of an automobile reveals only information regarding contraband items and concluding that society does not recognize a legitimate expectation of privacy in the public airspace surrounding a vehicle where the odor of narcotics escapes from the interior of a vehicle into that public airspace); *State v. Paredes*, 167 Ariz. 609, 810 P.2d 607, 611 (1991) (holding that a dog sniff of the outside of a car subsequent to a valid traffic stop did not constitute a search); *State v. Bergmann*, 633 N.W.2d 328, 335 (Iowa 2001)

(holding that the airspace around the car is not a protected area and police do not need a reasonable suspicion of drug-related activity prior to subjecting an otherwise lawfully detained vehicle to a canine sniff); *State v. Kalie*, 699 So.2d 879, 881 (La.1997) (holding that a dog sniff of a vehicle's exterior surfaces did not constitute a search); *Wilkes v. State*, 364 Md. 554, 774 A.2d 420, 437 (2001) (holding that an officer does not need reasonable articulable suspicion of drug-related criminal activity prior to subjecting defendant's car to a dog sniff subsequent to a lawful traffic stop); *State v. England*, 19 S.W.3d 762, 766 (Tenn.2000) (holding that a dog sniff during a legitimate traffic stop does not constitute a search because there is no expectation of privacy in contraband and a dog sniff does not violate any privacy interest).

Hence, the United States Supreme Court and most state supreme courts conclude that a dog sniff of a vehicle is not a search.

## II.

Colorado case law on point begins with *People v. Unruh*, 713 P.2d 370 (Colo.1986), in which this court held that the use of a narcotics detecting dog to sniff a locked safe in defendant's basement was a search. The court distinguished the holding in *United States v. Place* by suggesting that individuals have a reduced expectation of privacy in luggage or closed containers in airports, but that such reduced expectation did not apply to the home.[2] The court discussed, but did

---

*United States*, the Court ruled that using a thermal imager, a highly technologically advanced device not available to the general public, to obtain information regarding the interior of a home, constituted a search. *Id.* at 2043. The Court focused heavily on the special expectations of privacy attendant upon a home, and distinguished the situation from intrusions into areas characterized by reduced expectations of privacy. *Id.* Furthermore, the Court was primarily concerned about the revelation of myriad intimate and private details that a thermal imager, and the prospective use of continually advancing technology, could reveal. *Kyllo*, 121 S.Ct. at 2045–46. A dog sniff is not a technological advancement that invites the same sort of concern. Indeed, this court has noted that the use of canines for their recognized olfactory abilities has an extensive history dating back to early decisions, and the information a dog can reveal has remained largely unchanged throughout that

period. *Brooks v. People*, 975 P.2d 1105, 1111 n. 6 (Colo.1999); *see also State v. Bergmann*, 633 N.W.2d 328, 335 (Iowa 2001) (holding that a drug-sniffing dog is not technology of the type addressed in *Kyllo v. United States* meriting a divergence from the extensive national and federal case law developed regarding vehicle dog sniffs). We have expressly held that the use of a dog's olfactory senses "does not involve seemingly infallible scientific devices, processes or theories." *Brooks*, 975 P.2d at 1112.

**2.** The court suggested that it would follow the holding in *United States v. Place* if it were confronted by similar circumstances, but held that the reasoning was not applicable to *People v. Unruh* because the defendant had a heightened expectation of privacy in a locked safe located in the basement of his home. *Unruh*, 713 P.2d at 378.

not rely upon an expansion of the Colorado Constitution. The next case was *People v. Wieser*, 796 P.2d 982 (Colo.1990), in which the court divided. Three members of the court concluded that a dog sniff of the door of a personal storage locker in a commercial storage facility was not a search, relying upon *United States v. Place*. Four members of the court concluded that the sniff was a search, two by reliance upon the Colorado Constitution and two by reliance on the Fourth Amendment. In 1993, the court decided *People v. Boylan*, 854 P.2d 807 (Colo. 1993), involving the use of a drug-sniffing dog to detect the contents of an express carrier package. The court held in that case that the defendant had a reasonable expectation of privacy in the contents of the private courier package and that the use of a drug-sniffing dog to detect its contents was a search, apparently in reliance upon the Colorado Constitution. In *People v. May*, 886 P.2d 280 (Colo.1994), the court applied *People v. Boylan* to a package sent by regular mail and similarly concluded that the dog sniff was a search.

Most recently, this court decided in *People v. Ortega*, 34 P.3d at 988–991 (Colo. 2001), that a dog sniff of luggage on a Greyhound bus did not constitute a search. We expressly followed *United States v. Place* in stating that subjecting luggage to drug-sniffing canine detection does not constitute a search.

In my view, this line of cases supports a conclusion that the nature of the item or place being subjected to the dog sniff is the focal factor. If the sniff is of a home safe, a personal storage locker or a package, whether sent through the mail or through a private courier, it is a search. On the other hand, if the sniff is of luggage at a bus station, it is not a search.

This court has specifically acknowledged that there is a reduced expectation of privacy in vehicles. *People v. Litchfield*, 918 P.2d 1099, 1103 (Colo.1996) (a reduced privacy interest in automobiles requires only a reasonable suspicion for search under any circumstances); *People v. Thiret*, 685 P.2d 193, 202 (Colo.1984) (noting that there is a diminished expectation of privacy in an object de-

signed exclusively as a means of transportation).

I, therefore, analogize the automobile to the luggage at the bus station—and not to an item in someone's home, and would conclude that an individual has no reasonable expectation of privacy in the illegal contents of a vehicle that are detected by means of odors emanating from that vehicle. Instead, I would rely upon *United States v. Place* and *People v. Ortega* to conclude that the dog sniff here was not a search.

### III.

The majority here declines to follow the United States Supreme Court's analysis of the Fourth Amendment and instead reads the Colorado Constitution as providing protection that would not be available under the Fourth Amendment. I disagree that there is a basis for that expansion. In my view, such a divergence is only warranted when the language of the state constitution differs from its federal counterpart, or when the historical or legal context in which the state constitution was framed or has existed over time differs from its federal counterpart. I find neither to be present here.

The language addressing searches and seizures and our interpretation of that language is nearly identical for both the United States Constitution and the Colorado Constitution. *See Oates*, 698 P.2d at 814; *Sporleder*, 666 P.2d at 139. Furthermore, neither this case nor any of our prior cases suggest a history unique to Colorado. In fact, our own court has been inconsistent in its application of the state constitution to afford more protection in cases involving dog sniffs.

In my view, it is not enough that a state supreme court differs with the United States Supreme Court. *Sporleder*, 666 P.2d at 149 (Erickson, C.J., dissenting); *see, e.g., People v. Ramey*, 16 Cal.3d 263, 127 Cal.Rptr. 629, 545 P.2d 1333, 1341 (1976) (Clark, J., dissenting) (observing that when a majority of the court decides which United States Supreme Court decisions to follow, deference to appellate courts quickly deteriorates into a "shell game"); *People v. Disbrow*, 16 Cal.3d 101, 127 Cal.Rptr. 360, 545 P.2d 272, 283 (1976)

(Richardson, J., dissenting) (noting that "something more than personal disagreement by a majority of members of a state court with the decision of the United States high tribunal on search and seizure is required if the persuasion of that court is not to be followed." Further observing that "the shifting winds of judicial policy and personal predilection, is not calculated to produce that kind of uniformity or harmony conducive to the logical and uniform development of constitutional law").

In summary, because the United States Supreme Court has read the Fourth Amendment as inapplicable to dog sniffs of a vehicle, and because I find no support in our constitution or our case law to hold otherwise, I would hold that a dog sniff is not a search.

## IV.

If it were a search, I suggest that it is here supported by ample reasonable suspicion of criminal activity. Reasonable suspicion, as the majority notes, arises from specific and articulable facts that create a reasonable inference of wrongdoing. Maj. op. at 674.

First, I agree with the majority that the traffic stop was fully justified. After observing the traffic violation, the officer, Mike Miller, approached the vehicle in his patrol car and Haley accelerated and attempted to change lanes. Once Miller stopped the vehicle, he obtained information that led to an objectively reasonable suspicion. He learned that Haley, Dunlap, and Daniels had rented the car in Sacramento, a city that Miller referred to as a drug source city, and were returning inland to Kansas City allegedly because the cost of the rental car ($665.38) was less expensive than the air fare. Further, the officer testified that purchasing a one way ticket to a drug source city and driving back was indicative of drug couriers because of the desire to avoid heightened security in airports. He observed that the driver and the passengers were all unusually nervous. Throughout the contact Haley "was just I mean physically shaking. His hands, everything, was shaking." Haley's

mouth was dry and he was licking his lips, stuttering, shuffling his feet, and nervously pacing in circles. Daniel was also extremely nervous and exhibited a facial twitch and shaking hands and neither Dunlap nor Daniels knew their point of destination. Miller informed Haley that he was free to leave and asked him if he had any drugs or anything illegal in the vehicle, and Haley responded, "No. You want to check it out?" Haley asked the officer, "would you want to look at the bags or something?" Lastly, when Haley removed the bags from the trunk of the vehicle, he placed them directly outside the vehicle and then moved them an unusual distance away from the car and attempted to limit his consent to a search of the bags alone.[3]

Reasonable suspicion is a less exacting standard than probable cause. *People v. Smith,* 13 P.3d 300, 304 (Colo.2000). This reduced standard requires only an objectively reasonable suspicion on the part of trained law enforcement officers that the " 'facts known to the officer [at the time of the encounter], [when] taken together with rational inferences from these facts, create[ ] a reasonable suspicion of criminal activity.' " *People v. Sutherland,* 886 P.2d 681, 686 (Colo.1994) (quoting *People v. Thomas,* 660 P.2d 1272, 1274 (Colo.1983); alterations in *Sutherland* ); *Outlaw v. People,* 17 P.3d 150, 157 (Colo.2001) (holding that "[a] trial court must take into account the totality of the circumstances known to police officers at the time of the intrusion, combined with any rational inferences therefrom"). Courts must be deferential to a law enforcement officer's ability to distinguish between innocent and suspicious actions. *United States v. Wood,* 106 F.3d 942, 946 (10th Cir.1997); *see also People v. Ratcliff,* 778 P.2d 1371, 1379 (Colo.1989) (holding that a defendant's actions, while appearing innocent to a casual observer, assume added significance when considered in the context of a police officer's training and experience in drug enforcement). Here, that objectively reasonable suspicion existed. Miller concluded that the facts he knew at the time he trained the dog

---

**3.** After the consensual examination of the bags, Miller took only a couple of steps toward the

vehicle and in no way delayed the vehicle's departure.

on the vehicle were suspicious and led him to question whether or not the defendant was transporting contraband.[4]

This court has held that originating in a drug source city is one factor supporting a determination of reasonable suspicion. *People v. Morales,* 935 P.2d 936, 941 (Colo.1997). We have concluded that discrepancies or differing stories also add support to a finding of reasonable suspicion. *Id.* Further, we have acknowledged that reasonable suspicion of drug trafficking may be predicated, in part, on a cash transaction for a one way ticket and on nervous conduct. *Id.* n. 7 (citing *Florida v. Royer,* 460 U.S. 491, 502, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (stating that "appearance and conduct" may be factors supporting reasonable suspicion)). Unusual travel plans and inconsistencies in information provided to the officer during a traffic stop may also give rise to reasonable suspicion of criminal activity. *Wood,* 106 F.3d at 946–47. Because reasonable suspicion is based on any rational inferences an officer may draw from the totality of the circumstances, a court must examine the combination of all the facts to determine whether an officer had reasonable suspicion of criminal activity. *Morales,* 935 P.2d at 941; *Boylan,* 854 P.2d at 812 (holding that, while each separate item standing alone did not provide reasonable suspicion, a combination of factors clearly satisfied the reasonable suspicion requirement). We have held that "there are 'circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot.'" *Morales,* 935 P.2d at 941 (quoting *Reid v. Georgia,* 448 U.S. 438, 441, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980)). This case presents such circumstances.

Although we defer to the trial court in findings of fact, the majority acknowledges that this court reviews a trial court's conclusions of law de novo. *Outlaw,* 17 P.3d at 157; *People v. Garcia,* 11 P.3d 449, 453 (Colo. 2000). This court must independently determine whether the trial court applied the correct legal standard to the facts of the case, and whether sufficient evidence in the record supports its legal conclusions. *People v. Rivas,* 13 P.3d 315, 320 (Colo.2000). Here I

would suggest that the trial court applied an inappropriately high threshold and drew the wrong legal conclusion as to the presence of reasonable suspicion.

## V.

Because the United States Supreme Court has held that the dog sniff of a vehicle is not a search; because we held in *Ortega* that the dog sniff of luggage is not a search and I find that case instructive if not controlling; and because I would decline to invoke the Colorado Constitution to reach a different result, I would conclude that the dog sniff at issue here was not a search. Further, if the sniff here was indeed a search, I would conclude that it was supported by an objectively reasonable suspicion of wrongdoing.

Accordingly, I dissent from the majority opinion and would reverse the trial court's exclusion of the evidence at issue.

I am authorized to state that Justice RICE and Justice COATS join in this dissent.

---

4. Miller detailed his extensive training and experience in drug interdiction and specifically in

highway drug interdiction.